**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2114-12T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Appellant/
Cross-Respondent,

v.

I.B.,

    Defendant-Respondent/
Cross-Appellant,

and

A.E.,

    Defendant-Respondent.

_____

IN THE MATTER OF R.B., a Minor.

_____

APPROVED FOR PUBLICATION

August 11, 2015

APPELLATE DIVISION

Argued October 7, 2014 — Decided August 11, 2015

Before Judges Fisher, Nugent[1] and Accurso.

_____

[1] Judge Nugent did not participate in oral argument. The parties, however, have consented to his participation in the decision. R. 2:13-2(b).

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-460-12.

Michelle Mikelberg, Deputy Attorney General, argued the cause for appellant/cross-respondent (John J. Hoffman, Acting Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. Mikelberg, on the briefs).

Stephen S. Berowitz argued the cause for respondent/cross-appellant I.B. (Shaievitz & Berowitz, attorneys; Mr. Berowitz, on the briefs).

Respondent A.E. joins in the brief of appellant NJDCCP.

Todd Wilson, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Mr. Wilson, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The central issue in this Title Nine trial was whether a licensed psychologist retained by the Division of Child Protection and Permanency to evaluate a five-year old could offer his opinion on the nature of her reported symptoms and his diagnosis to corroborate the child's hearsay report that her father made her touch his genitals. The trial judge heard the testimony pursuant to N.J.R.E. 104 but determined to exclude it based on a line of criminal cases starting with State v. J.Q., 130 N.J. 554 (1993), in which the Supreme Court rejected the use

of Child Sexual Abuse Accommodation Syndrome evidence as substantive proof of child abuse.

The State's expert in this case, however, did not offer an opinion on Child Sexual Abuse Accommodation Syndrome. He testified that the child, whom he evaluated within a month of the alleged abuse, suffered from Adjustment Disorder with mixed disturbance of emotions and conduct and concluded her "statements and presentation are consistent with a child who has experienced sexual abuse." We reverse and remand for the judge to consider the testimony offered by the Division's expert. We hold the psychological opinion evidence offered here is admissible to corroborate the child's allegation of abuse subject, of course, to whatever weight the judge deems appropriate to accord the testimony.

In rendering his opinion from the bench, the trial judge stated: "if this is not the hardest case that I have had to decide, it is the closest that I have ever had to come." Because we are remanding for further consideration of the evidence, we only briefly describe the allegations and the thrust of the father's defense.

A-2114-12T2

The Division claimed that defendant father I.B. committed an act of sexual abuse against his five-year-old daughter, Rose,[2] by calling her into the bathroom at their home and telling her to touch his penis. Some days later, Rose spontaneously revealed this incident to her mother, A.E.,[3] a medical doctor who had trained as a gynecologist in the family's native Sudan. Rose's mother initially discounted the allegation. She assumed the child may have accidently seen her father naked and been naturally curious, given her age, prompting the child's conversation with her. When she asked Rose about it sometime later, however, the child got upset and said she didn't want to talk about it because it made her stomach hurt. After several more such conversations in which the child shared additional details, including that her father had washed "the glue" from her hands afterward, A.E. sought a restraining order against her husband in which she revealed the child's allegation. Court personnel advised A.E. that she should report the incident to the Division.

We note here that both parents acknowledged marital discord pre-dating the allegation of sexual abuse. Defendant

---

[2] We use a fictitious name to protect the child's identity.

[3] Although A.E. was named as a defendant in the action, the Division did not pursue a claim against her. We refer to I.B. as defendant in this opinion.

categorically denied the child's account. He claimed his wife had coached their daughter to make false allegations against him.

Following an initial interview by a Division caseworker, Rose participated in a videotaped interview conducted by a certified forensic interviewer at Wynona's House Child Advocacy Center. Rose recounted the allegation to the interviewer, providing some specific details such as the television program she had been watching when her father called her into the bathroom as well as the particular towel he had wrapped around him. Using anatomically correct dolls to demonstrate what had occurred, the five-year old placed the female doll's hand on the male doll's penis and moved the hand. She reported that her father was silent as he "finished peeing." At the end of the interview, Rose spontaneously asked the interviewer whether "touching butts [the word she used to describe the vagina, penis and buttocks on anatomical drawings] is [a] good thing or not a good thing?"

Following the interview, the Division filed its complaint and referred Rose to the Metropolitan Regional Child Abuse Diagnostic and Treatment Center. Staff psychologist Justin Misurell, Ph.D., conducted a psychosocial evaluation of the child based on the videotape of the forensic interview, Division

records, and a clinical interview of Rose. In that interview, Rose confirmed the statements she made during the forensic interview and "reported that she frequently experiences nightmares about 'bad things like getting locked in the bathroom.'" She also reported that her parents used to often argue, that she thinks frequently about those incidents, and that they make her feel sad.

Misurell diagnosed Rose as suffering from Adjustment Disorder with mixed disturbance of emotions and conduct and concluded her "statements and presentation are consistent with a child who has experienced sexual abuse." He found she "has exhibited trauma related symptoms" including intrusive thoughts about the incident, nightmares, and has engaged in active attempts to avoid thinking about the abuse. Misurell attributed Rose's symptoms to "her sexual abuse experience and exposure to marital discord."

After hearing Misurell's testimony pursuant to N.J.R.E. 104, the judge determined to strike his opinion, ruling that the expert would not be permitted to "express opinions as to the psychological condition of the child for the purposes of showing that the sexual assault has, in fact, occurred." Based on the Court's opinion in J.Q. and our opinions in State v. Scherzer, 301 N.J. Super. 363 (App. Div.), certif. denied, 151 N.J. 466

(1997) and <u>N.J. Div. of Youth & Family Servs. v. Z.P.R.</u>, 351

<u>N.J. Super.</u> 427 (App. Div. 2002), the court determined it could

not consider Misurell's opinion as "substantive evidence that

the child was abused."  The judge did, however, admit the

statements the child made to Misurell during the evaluation,

including her report of nightmares.

Although finding the case an extraordinarily close one, the

judge ultimately determined the Division lacked any

corroboration for the child's report of sexual abuse.  The judge

specifically rejected defendant's claims that A.E. had coached

Rose into lying about the incident, stating that "after

observing [A.E.] throughout the course of the trial and hearing

her testimony, it is apparent that these assertions are without

merit."  Notwithstanding, the court noted inconsistencies in

A.E.'s testimony regarding the timeline of events and found

"there was really no development during the course of this case

of any sort of corroboration as to the date, time, and place

that the child says that I was in the bathroom with my father."[4]

The judge further found no physical evidence or precocious

_____

[4] There was no dispute that during the timeframe in question,
Rose was in her father's sole care for at least two nights a
week while her mother attended graduate school classes.  Rose,
however, initially reported that her mother was in the living
room when the assault allegedly occurred.  She later said her
mother was at school and still later that she was in the
kitchen.

sexual knowledge. Although acknowledging the child's report of nightmares, the judge found they did "not appear . . . to be necessarily connected because the child was experiencing turmoil within the family between the father and the mother."

Actions filed by the Division alleging abuse and neglect of children are governed by statute. N.J.S.A. 9:6-8.21 to -8.73. An abused or neglected child is defined, among other ways, as one under the age of eighteen whose parent "commits or allows to be committed an act of sexual abuse against the child." N.J.S.A. 9:6-8.21c(3). The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46b). The statute provides that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46a(4).

Although the most effective types of corroborative evidence would obviously be eyewitness testimony, an admission by the accused, or medical or scientific testimony documenting abuse, we have acknowledged that such evidence in sexual abuse cases is

rare.  Z.P.R., supra, 351 N.J. Super. at 436.  In Z.P.R. we followed the reasoning of other courts holding that the corroboration requirement must reasonably be construed to also include indirect evidence of abuse, including, for example, "a child victim's precocious knowledge of sexual activity, a semen stain on a child's blanket, a child's nightmares and psychological evidence."  Ibid. (quoting State v. Swan, 790 P.2d 610, 615-16 (Wash. 1990), cert. denied, 498 U.S. 1046, 111 S. Ct. 752, 112 L. Ed. 2d 772 (1991)).  We held the "corroborative evidence need not relate directly to the alleged abuser, it need only provide support for the out-of-court statements."  Ibid.

Here, the trial judge struck psychological evidence of emotional effects that are routinely admitted in Title Nine cases.[5]  Such evidence is admitted because judges find it will assist them "to understand the evidence or to determine a fact in issue."  N.J.R.E. 702; Z.P.R., supra, 351 N.J. Super. at 439. It appears that the trial judge, who conscientiously struggled with the issue of corroboration in this case, disallowed the expert's opinion, not because he thought the testimony would not be helpful in understanding the child's symptoms, but because he

---

[5] Indeed, the judge acknowledged admitting such testimony in other cases, at least one of which was affirmed by this court.

thought the evidence barred by precedent. We do not agree that the case law would bar the expert's opinion here.

The Supreme Court in J.Q. barred the use of Child Sexual Abuse Accommodation Syndrome to establish guilt because the syndrome was never intended as a diagnostic device and does not detect sexual abuse. 130 N.J. at 578-79. Instead, it assumes the presence of abuse and explains the child's reactions to it. Id. at 579. The syndrome was only ever intended to help explain why many sexually abused children delay reporting their abuse or recant their allegations. Ibid. Because it is not probative of sexual abuse, the Court limited its use in accordance with its intended purpose, that is as rehabilitative evidence to help "dispel preconceived, but not necessarily valid, conceptions jurors may have concerning the likelihood of the child's truthfulness as a result of her delay in having disclosed the abuse or sought help." State v. W.B., 205 N.J. 588, 610 (2011) (quoting State v. P.H., 178 N.J. 378, 395 (2004)).

Because the Court in J.Q., 130 N.J. at 580, analogized its ruling on the admissibility of Child Sexual Abuse Accommodation Syndrome to the approach adopted in other jurisdictions to evidence of Rape Trauma Syndrome, a syndrome that purports "to dispel such common myths as that victims immediately report a rape or that all victims display an emotional demeanor after an

attack," we held in Scherzer, supra, 301 N.J. Super. at 399, 409, that it was similarly error for a court to allow an expert to testify in a criminal case that the victim suffered from Rape Trauma Syndrome.

Neither Child Sexual Abuse Accommodation Syndrome nor Rape Trauma Syndrome played any part in this case. Misurell diagnosed Rose with Adjustment Disorder with mixed disturbance of emotions and conduct. He explained the reason he diagnosed Adjustment Disorder and not Post-Traumatic Stress Disorder (PTSD) was because he evaluated Rose within a month of her allegation of abuse, thus her symptoms had not persisted long enough to qualify her as suffering from PTSD. The trial judge deemed the diagnosis significant because he read Scherzer to include PTSD with Rape Trauma Syndrome as not probative of sexual abuse.

The reference to PTSD in Scherzer is a fleeting one. The objected-to testimony in that case involved Rape Trauma Syndrome, not PTSD. The court reported that one of the experts for the State acknowledged on cross-examination that Rape Trauma Syndrome "would fall under the category of post-traumatic stress disorder in the DSM III"[6] (Diagnostic and Statistical Manual of

---

[6] This does not appear to have been factually accurate. Although PTSD was included in the DSM III, Rape Trauma Syndrome was not.

(continued)

11

Mental Disorders III), a condition that another of the State's experts did not find in the victim. Scherzer, supra, 301 N.J. Super. at 400. The error we identified in Scherzer was that the trial judge allowed the expert to testify that the victim "exhibited the rape trauma syndrome"; our holding did not address PTSD. Id. at 409.

More directly on point than Scherzer for this discussion is State v. Hines, 303 N.J. Super. 311 (App. Div. 1997). In Hines, a case decided shortly after Scherzer, Judge Skillman reviewed the literature and surveyed the case law relating to the admissibility of PTSD evidence. Finding that PTSD was well recognized as a psychiatric disorder included in the DSM IV, and that courts in other jurisdictions had held it possessed sufficient scientific reliability to justify the admission of expert testimony about the condition in appropriate circumstances, we held it was error for the trial judge to have precluded defendant from presenting testimony that she suffered

_____

(continued)
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 236-39 (3d ed. 1980). PTSD remains a recognized diagnosis in the DSM V, but neither Rape Trauma Syndrome nor Child Sexual Abuse Accommodation Syndrome is included as a recognized diagnosis in the current version of the Manual. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 265-90 (5th ed. 2013).

from the condition at the time she killed her father, whom she alleged sexually abused her when she was a child.  Id. at 313.

Specifically, applying the principles set forth in State v. Kelly, 97 N.J. 178 (1984), for the admission of expert testimony,[7] we concluded the evidence was not objectionable and that the expert's "proposed testimony regarding PTSD would have been directly relevant to the issues of the honesty and reasonableness of defendant's purported belief that she had to resort to deadly force in order to repel the victim's assault" and "also may have lent credibility to defendant's assertion that the victim sexually abused her as a child, which was

---

[7] The Court in Kelly indicated there are "three basic requirements for the admission of expert testimony: (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony." 97 N.J. at 208. Applying those principles, the Court held that expert testimony regarding "battered woman's syndrome" was admissible to help establish a claim of self-defense in a homicide case.  Id. at 187.  Specifically, the Court held defendant's expert "could state . . . that defendant had the battered-woman's syndrome, and could explain that syndrome in detail, relating its characteristics to . . . the honesty and reasonableness of defendant's belief" that she was in imminent danger of death or serious injury at the time of the killing.  Id. at 207.  The Court has since noted that "[a]lthough 'battered woman syndrome' is not a listed psychological 'syndrome' in the [DSM], the experience of being battered is mentioned as a potential triggering event for [PTSD].  Some have referred to it as a 'sub-category' or 'subclass' of PTSD."  State v. B.H., 183 N.J. 171, 183 (2005) (citations omitted).

relevant to the reasonableness of her belief that he intended to sexually assault her again."  Hines, supra, 303 N.J. Super. at 324-25.

Accordingly, Hines stands for the proposition that PTSD testimony is admissible in a criminal trial and can serve to lend additional credibility to a defendant's allegations that she was sexually abused by the victim and be probative of the honesty and reasonableness of her belief that she had to resort to deadly force to prevent him from raping her again.  Id. at 326.  The case provides sound precedent for the admission of Misurell's opinion that Rose suffered from Adjustment Disorder, described in the circumstances presented as a variant of PTSD, and that her symptoms were consistent with a child who has experienced sexual abuse.  If accepted by the fact-finder, such psychological testimony could serve as indirect corroboration of the child's allegation of sexual abuse.[8]  See Z.P.R., 351 N.J. Super. at 436.

---

[8] The trial judge relied on Judge Weissbard's statement in Z.P.R. that evidence of Child Sexual Abuse Accommodation Syndrome had been held to be "admissible 'to explain secrecy, belated disclosure and recantation by a child sex abuse victim' but not 'to prove that sex abuse, in fact, occurred,'" 351 N.J. Super. at 438 (quoting State v. J.Q., 252 N.J. Super. 11, 43 (App. Div. 1991), aff'd, 130 N.J. 554 (1993)).  As we have explained, the Court limited the use of Child Sexual Abuse Accommodation Syndrome in accord with its designed purpose.  J.Q., supra, 130 N.J. at 579.  The Court made clear it was not "rul[ing] out the
(continued)

Hines is also instructive on another important point.  In acknowledging that PTSD possesses sufficient scientific reliability to justify the admission of expert testimony about the condition in appropriate circumstances, we noted "that the admissibility of scientific evidence may turn not only on its reliability but the purpose for which it is offered."  Hines, supra, 303 N.J. Super. at 318 n.1.  In State v. Cavallo, 88 N.J. 508, 520 (1982), the Court noted that "[e]xpert evidence that poses too great a danger of prejudice in some situations, and for some purposes, may be admissible in other circumstances

_____

(continued)
possibility that a qualified behavioral-science expert could demonstrate a sufficiently reliable scientific opinion to aid a jury in determining the ultimate issue that the abuse had occurred."  Id. at 565.  Rather it provided guidance for the admission of such evidence by suggesting criteria a trial court may wish to consider in "evaluating the qualifications of a witness who seeks to offer substantive evidence of sexual abuse," clearly signaling its intent that the opinion not be read to bar all use of psychological testimony as substantive evidence of sexual abuse.  Id. at 565-66.  Indeed in Hines, we noted the appropriate use of Child Sexual Abuse Accommodation Syndrome for rehabilitative purposes and PTSD testimony as substantive evidence in the same case.  303 N.J. Super. at 315-18.  In Z.P.R., we suggested on remand "in the interest of having as complete a record as possible in this difficult and serious matter," that the judge consider "permitting [the State's expert] to evaluate [the allegedly abused and neglected child] and, if appropriate in light of any supplemental reports filed thereafter, to testify concerning his findings, as well as about his opinions on the reliability of the in camera interview."  351 N.J. Super. at 439-40.  An evaluation of the child would not have been necessary if the expert would be confining his opinion to Child Sexual Abuse Accommodation Syndrome.

where it will be more helpful and less prejudicial."  It explained that "the usefulness of expert testimony depends in part on the context in which it is offered.  Testimony may be more helpful than prejudicial in one context, because it is being used for a limited purpose or because the factfinder knows its limitations.  Yet in different contexts the same evidence might be excluded as unreliable."  Id. at 526 n.8.

Our Family Part judges regularly qualify experts in psychology and psychiatry and hear the opinion testimony those experts offer in a variety of contexts.  The Court has many times noted the special expertise of Family Part judges and the grave responsibilities the Legislature has reposed in them to ensure the safety of children in our State.  See Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).  We are confident that the judges hearing Title Nine cases regularly assess the sort of testimony that was offered here and are more than capable of evaluating the opinions of experts and understanding the limitations of behavioral science testimony in a way untrained jurors may not.

We expect the judges in these cases to rigorously evaluate expert testimony offered to corroborate a child's allegation of abuse.  But so long as the proffered testimony meets the requirements of N.J.R.E. 702 and Kelly, as the evidence offered

here does,[9] the questions should be directed to the weight and not the admissibility of the testimony.[10]  See In re Yaccarino, 117 N.J. 175, 195-96 (1989).

In this case, the experienced and conscientious trial judge expressed appropriate concern about the expert's ability to link the child's symptoms, and especially her nightmares, to the alleged sexual abuse as opposed to the admitted marital discord between her parents.  That is an important and legitimate area of inquiry, which the psychologist should have been well prepared to address.  If the judge believed that the child suffered from nightmares, as she told the expert and as her mother testified, then their meaning and significance is a question the judge was required to answer in determining whether

---

[9] To the extent the trial judge rejected Misurell's testimony based on any lack of training on the part of the psychologist or the forensic interviewer, we conclude he erred.  Misurell testified he had conducted over 200 evaluations of child victims of sexual abuse, received instruction on how to appropriately interview sexually abused children and was able to identify indications of "coaching."  The forensic interview was conducted by a certified forensic interviewer.  Both professionals were qualified to undertake their respective tasks.  Moreover, the judge specifically noted that he did not find any improprieties in the interviewer's questioning of the child.

[10] Evaluation of psychological or behavioral science testimony, of course, requires distinguishing among different syndromes and diagnoses and their respective scientific underpinnings.  See J.Q., supra, 130 N.J. at 566.  We decline to follow our opinion in State v. W.L., Sr., 292 N.J. Super. 100, 113-16 (App. Div. 1996) because we failed there to distinguish PTSD from Child Sexual Abuse Accommodation Syndrome.

they could serve to corroborate her allegation of sexual abuse.

See Z.P.R., supra, 351 N.J. Super. at 436.

Misurell testified that Rose's nightmares about "bad things like getting locked in the bathroom" were a "trauma related symptom" of the alleged sexual abuse. In referencing that testimony in his opinion from the bench, the judge said:

> My experience with dreams in life is that we all can say, you know, what do you think that dream was about? You know, what [does it] mean? Usually it comes back to some traumatic incident in our life but rarely do we dream the incident itself. I feel like I'm falling down the stairs or I feel like I'm late for the exam when I have a brief to write in the Court. So these are the issues that have developed around these nightmares, the time for the nightmare and when they were.

The judge ultimately concluded that the nightmares did "not appear . . . to be necessarily connected [to the alleged sexual abuse] because the child was experiencing turmoil within the family between the father and the mother."

One of the criteria for diagnosing PTSD we noted in Hines was that the traumatic event is persistently re-experienced in recurrent distressing dreams of the event. 303 N.J. Super. at 320 n.3. Because the judge deemed the expert's testimony inadmissible, he deprived himself of the expert's opinion, based on the expert's knowledge, education, and experience, of the significance of the child's nightmares and of the opportunity to

18                                                          A-2114-12T2

probe the expert's reasons for relating the nightmares to the alleged sexual abuse instead of to her parents' marital discord.

Because we hold that the expert's opinion was admissible as substantive evidence to corroborate the child's allegation of abuse, we remand the matter to the trial judge for consideration of the expert's report and testimony. The judge is to weigh all of the evidence, including Misurell's testimony, make determinations as to the credibility and weight of that evidence, and come to a final determination as to whether the allegation of abuse has been proven by a preponderance of the evidence. Because his ruling on the admissibility of the expert's testimony may have resulted in the trial judge not probing the expert's opinion as he would otherwise, we do not foreclose the judge from recalling the expert to address any questions the judge might have regarding his testimony. The judge need not hear additional testimony but should, of course, permit further argument in light of this opinion.

We reject defendant I.B.'s cross-appeal from the trial court's denial of his pre-trial motions to depose A.E., Misurell, the forensic interviewer and the Division caseworker.[11] The trial judge initially denied defendant's motion for this

---

[11] I.B. also sought to have a mental health professional evaluate Rose. He has expressly abandoned this issue on appeal.

discovery without prejudice on account of his failure to file a brief in support of the motion. On re-presentation of the motion, the judge found no showing of good cause.

Rule 5:12-3 compels the Division to provide all relevant reports as well as the reports of experts and all other documents on which it intends to rely to the court and counsel for all parties on the first return date of the order to show cause. The Division must also make its entire file available for inspection to the attorneys for the parties. All other discovery is permitted only on leave of court for good cause shown.

I.B. has produced no proof that the court abused its discretion in denying his motion for discovery. His contention that inconsistencies exist in the witnesses' reports of the child's statements does not represent good cause for the discovery he requests. There is no allegation that the Division failed to comply with its discovery obligations and the record indicates that trial counsel had nearly four months to review the Division's evidence and prepare for the fact-finding hearing. He presents even less reason for his request to us to permit these depositions on remand, as our review of the record

reveals he has already extensively cross-examined each of these witnesses.[12]

We deny I.B.'s motion to supplement the record with documents memorializing the disposition of the criminal charges against him as irrelevant to the issues on appeal. The parties' remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed in part; reversed in part; and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[12] We reject defendant's request to now retain an expert as grossly out of time.

A-2114-12T2