**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4191-15T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

A.E.,

    Defendant,

and

I.B.,

    Defendant-Appellant.

_____

IN THE MATTER OF R.B.,

    a Minor.

_____

        Argued May 21, 2018 - Decided June 19, 2018

        Before Judges Messano, Accurso and O'Connor.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Essex
        County, Docket No. FN-07-0460-12.

        Victoria D. Miranda argued the cause for
        appellant (Williams Law Group, attorneys;
        Allison C. Williams, of counsel and on the
        brief; Victoria D. Miranda, on the brief).

Michelle Mikelberg, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Michelle Mikelberg, on the brief).

Todd Wilson, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Todd Wilson, on the brief).

PER CURIAM

This abuse and neglect matter returns to us following our remand for the judge to consider the testimony of a psychologist offered by the Division of Child Protection and Permanency to corroborate five-year-old Rose's report of sexual abuse by her father, defendant I.B.[1] N.J. Div. of Child Prot. & Permanency v. I.B., 441 N.J. Super. 585, 598 (App. Div. 2015). Upon consideration of the testimony, the judge found it corroborated Rose's allegations and entered a finding that I.B. abused or neglected his daughter. We affirm.

We provided the background of this case in our prior opinion.

> The Division claimed that defendant father I.B. committed an act of sexual abuse against his five-year-old daughter, Rose, by calling her into the bathroom at their home and telling her to touch his penis. Some days later, Rose spontaneously revealed this incident to her mother, A.E., a medical doctor who had trained as a gynecologist in

---

[1] We use initials and pseudonyms to protect the child's privacy.

the family's native Sudan. Rose's mother initially discounted the allegation. She assumed the child may have accidently seen her father naked and been naturally curious, given her age, prompting the child's conversation with her. When she asked Rose about it sometime later, however, the child got upset and said she didn't want to talk about it because it made her stomach hurt. After several more such conversations in which the child shared additional details, including that her father had washed "the glue" from her hands afterward, A.E. sought a restraining order against her husband in which she revealed the child's allegation. Court personnel advised A.E. that she should report the incident to the Division.

[I.B., 441 N.J. Super. at 588 (footnotes omitted).]

We noted "both parents acknowledged marital discord pre-dating the allegation of sexual abuse," and that I.B "categorically denied the child's account." Ibid. He claimed his wife, A.E., "coached their daughter to make false allegations against him." Ibid.

Describing the investigation, we wrote that

[f]ollowing an initial interview by a Division caseworker, Rose participated in a videotaped interview conducted by a certified forensic interviewer at Wynona's House Child Advocacy Center. Rose recounted the allegation to the interviewer, providing some specific details such as the television program she had been watching when her father called her into the bathroom as well as the particular towel he had wrapped around him. Using anatomically correct dolls to demonstrate what had occurred, the

five-year old placed the female doll's hand on the male doll's penis and moved the hand. She reported that her father was silent as he "finished peeing." At the end of the interview, Rose spontaneously asked the interviewer whether "touching butts [the word she used to describe the vagina, penis and buttocks on anatomical drawings] is [a] good thing or not a good thing?"

Following the interview, the Division filed its complaint and referred Rose to the Metropolitan Regional Child Abuse Diagnostic and Treatment Center. Staff psychologist Justin Misurell, Ph.D., conducted a psychosocial evaluation of the child based on the videotape of the forensic interview, Division records, and a clinical interview of Rose. In that interview, Rose confirmed the statements she made during the forensic interview and "reported that she frequently experiences nightmares about 'bad things like getting locked in the bathroom.'" She also reported that her parents used to often argue, that she thinks frequently about those incidents, and that they make her feel sad.

Misurell diagnosed Rose as suffering from Adjustment Disorder with mixed disturbance of emotions and conduct and concluded her "statements and presentation are consistent with a child who has experienced sexual abuse." He found she "has exhibited trauma related symptoms" including intrusive thoughts about the incident, nightmares, and has engaged in active attempts to avoid thinking about the abuse. Misurell attributed Rose's symptoms to "her sexual abuse experience and exposure to marital discord."

[I.B., 441 N.J. Super. at 589 (alterations in original).]

The trial judge ruled Dr. Misurell's testimony inadmissible. Id. at 589-90. Although rejecting I.B.'s assertion that A.E. coached their daughter to lie about the incident after hearing A.E.'s testimony, the judge nevertheless found inconsistencies in the timeline she offered and ultimately determined the Division lacked any corroboration of the child's report of her father's abuse. Id. at 590.

We concluded the judge erred in striking "psychological evidence of emotional effects" routinely admitted in Title Nine cases to assist judges "'to understand the evidence or to determine a fact in issue.' N.J.R.E. 702; [N.J. Div. of Youth & Family Servs. v.] Z.P.R., 351 N.J. Super. [427,] 439 [(App. Div. 2002)]." Id. at 591-92. We expressed our expectation that "the judges in these cases [will] rigorously evaluate expert testimony offered to corroborate a child's allegation of abuse," but held that "so long as the proffered testimony meets the requirements of N.J.R.E. 702 and [State v. ]Kelly, [97 N.J. 178 (1984)], as the evidence offered here does, the questions should be directed to the weight and not the admissibility of the testimony." I.B., 441 N.J. Super. at 596-97 (footnotes omitted).

Accordingly, because we held "the expert's opinion was admissible as substantive evidence to corroborate the child's

allegation of abuse," we remanded "for consideration of the expert's report and testimony," with instructions to the judge "to weigh all of the evidence, including Misurell's testimony, make determinations as to the credibility and weight of that evidence, and come to a final determination as to whether the allegation of abuse has been proven by a preponderance of the evidence." Id. at 598. Allowing for the possibility that the trial judge's decision to exclude "the expert's testimony may have resulted in the . . . judge not probing the expert's opinion as he would otherwise, we [did] not foreclose the judge from recalling the expert to address any questions the judge might have regarding his testimony." Ibid.

On remand, the trial court provided the parties the opportunity to brief whether Dr. Misurell should be permitted to testify and the weight the court should afford the testimony. The Division opposed reopening the record for Dr. Misurell's testimony, arguing it was unnecessary as he had already testified to his opinions at length. I.B. argued the court should reopen the record to address specific issues raised by this court, including "how, or why, Dr. Misurell attributed [Rose's] nightmares to sexual abuse, and not to her parents' marital discord." The court elected to hear additional testimony from Dr. Misurell as requested by I.B. The judge

questioned the psychologist at length, focusing particularly on the symptoms the child was reported to have exhibited and their relation to: the expert's diagnosis of adjustment disorder; the child's use of different descriptors for the conduct at different times; and why the expert concluded the child's nightmares were more likely related to her alleged sexual abuse than to her parents' marital discord or the shunning the family suffered following the child's disclosure. The judge also probed whether the expert considered that the child's nightmares only began after the child's report of the incident, days or perhaps weeks after the incident occurred and asked what "red flags" would have caused the psychologist to question the validity of the child's disclosure. I.B.'s counsel cross-examined the expert, getting him to concede the acrimonious relationship between her parents undoubtedly played a role in the child's distress, and that the enormous variability in children's reactions to sexual abuse makes diagnosis difficult.

After hearing the testimony, the judge issued an oral opinion from the bench, concluding the expert's testimony corroborated Rose's report of sexual abuse by her father. The judge stated he found Dr. Misurell "very credible, honest and straight-forward in his testimony." The judge was particularly impressed by the expert's acknowledgment of the limits of

psychological evidence, recapping his testimony on the point by saying, "look, if you're looking for the answer in a psychologist to tell you whether the incident happened, I can't. I can only tell you that she is suffering from this syndrome and that this syndrome is consistent."

Again expressing the opinion that "this was an extremely close case," for the reasons discussed at length in his decision after the fact-finding hearing in 2012, the judge pronounced himself satisfied based on Dr. Misurell's testimony that Rose suffered from an adjustment disorder, "pre-post traumatic stress," consistent with abuse, providing "the corroboration necessary for a determination in this case."

I.B. appeals, arguing the trial court erred by giving undue weight to Dr. Misurell's testimony and "making legal determinations that do not flow from the facts presented at trial." I.B. further argues Dr. Misurell's testimony did not provide sufficient corroboration for Rose's out-of-court statements, and thus "cannot be used to sustain a finding of sexual abuse," and that he was deprived of the effective assistance of counsel during the fact finding hearing. Having reviewed the record, we conclude none of those arguments is of sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

I.B.'s arguments as to the judge's assessment of Dr. Misurell's testimony reduce to quarrels with the judge's fact-finding, which we are simply in no position to reject. We will not overturn the factual findings and legal conclusions of a trial judge sitting in a non-jury case "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (alteration in original) (quoting In re Trust Created By Agreement Dated December 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)). Deference is especially appropriate in a case such as this where "the evidence is largely testimonial and involves questions of credibility." Ibid.

As the Supreme Court has observed, because the trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). The Court has instructed reviewing courts to accord a special "deference to family court factfinding" in light of "the family

courts' special jurisdiction and expertise in family matters."
Cesare v. Cesare, 154 N.J. 394, 413 (1998).

Having reviewed the record, we are satisfied the trial judge fulfilled all of his obligations on remand. The judge admitted Dr. Misurell's testimony and rigorously questioned the expert in order to understand the limits of the testimony and the weight the court should accord it. After weighing the expert's testimony in light of the other evidence in the record, the judge concluded the psychological evidence corroborated Rose's report of her father's sexual abuse. See Z.P.R., 351 N.J. Super. at 436. We find no error in the judge's assessment of the evidence or his conclusion that the Division proved its case by a preponderance of the evidence. I.B.'s contention that he was deprived the effective assistance of counsel on remand is utterly without merit. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                                          A-4191-15T4