# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5218-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.P. and D.D.,

     Respondents,

and

L.M.,

     Defendant-Appellant.

_____

IN THE MATTER OF G.D., A.M.,
B.M., and A.M., Minors.

_____

Submitted October 21, 2020 – Decided November 17, 2020

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FN-09-0138-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Jennifer M. Kurtz, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Jacalyn M. Estrada, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant L.M.[1] appeals from a May 2, 2019 fact-finding determination that he sexually abused his stepdaughter, G.D. (Gail), in violation of N.J.S.A. 9:6-8.21(c)(3). We affirm.

On May 20, 2018, Gail informed her mother, D.P., that her stepfather sexually abused her. Gail was twelve years old at the time. That same day, Gail told her biological father, D.D., about the abuse. On May 21, 2018, the Bayonne Police Department made a referral to the Division of Child Protection and

---

[1] We use initials and a fictitious name for the child to protect privacy interests and the confidentiality of the record. R. 1:38-3(d)(12).

Permanency (Division) after Gail, accompanied by her mother and a paternal aunt, reported the abuse. During a videotaped interview with the police, Gail described three recent incidents when defendant came to her bedroom and touched her inappropriately. She described how defendant digitally penetrated her during the first two incidents and placed his hand inside her shirt and grabbed one of her breasts during the third incident. The last incident occurred two days prior to her police interview. Gail told the police that approximately five years earlier, defendant also placed her on top of him while he was watching television and started "pushing [her] against his private area." Defendant denied Gail's accusations.

Within forty-eight hours of her disclosure to the police, Gail went to Colorado to live with her father. Accordingly, she was not evaluated in New Jersey regarding her allegations of sexual abuse. In November 2018, she was evaluated at a child advocacy center in Colorado by Dr. Coral A. Steffey, a licensed, board-certified pediatrician who specializes in child abuse, who concluded Gail was sexually abused.

Neither Gail nor defendant testified at the fact-finding hearing, which commenced on May 1, 2019. The Division arranged for Dr. Steffey to testify on the first day of trial, and the judge permitted extensive voir dire of this expert.

A-5218-18T1

The judge qualified Dr. Steffey as an expert in child abuse and permitted her to testify over the defendant's objection.

Dr. Steffey explained her approach to evaluating children who have reported being abused. She testified that generally, she would "look at what the risk factors are for sexual abuse, look at the disclosure of the child, look at any behavioral changes that are consistent with a child who's experienced trauma, and then [] make a medical diagnosis." She added that based on her diagnosis, she would formulate treatment recommendations.

Dr. Steffey confirmed that during Gail's evaluation, the child disclosed that defendant sexually abused her by "touch[ing] her private parts with his hand." Gail also revealed that she had difficulty sleeping and was "easily frustrated." Dr. Steffey noted that Gail exhibited "clinically significant" behavioral and emotional symptoms, including depression, suicidal ideation, for which the child had been hospitalized, poor school performance and "self-injury by cutting herself." Dr. Steffey's report confirmed she observed ten healed scars on Gail's left arm, which Gail admitted were from "cutting." The doctor stated self-mutilation is a common behavior of children "who have been the victims of trauma and, specifically, sexual abuse." Additionally, Dr. Steffey found Gail's

4

lack of recantation noteworthy, and testified the fact Gail did not recant "really indicates to me that she was ready to tell – she had to share what had happened."

Dr. Steffey determined Gail "had the risk factors for sexual abuse." Upon reviewing those factors, the history provided by the child and her father, Gail's claims of sexual abuse and the symptoms she reported, Dr. Steffey opined Gail was sexually abused. Accordingly, Dr. Steffey recommended that Gail undergo a mental health evaluation.

After Dr. Steffey testified, the Division presented testimony from Gail's primary intake caseworker and a permanency worker. These witnesses testified about the referral the Division received and the steps it took after Gail's disclosure.

Defendant elicited testimony from his expert, Dr. Barry Katz, as well as D.P. Dr. Katz was qualified as an expert in forensic evaluations of child abuse. He opined that Dr. Steffey should have conducted a more thorough evaluation by interviewing people Gail knew, and reviewing other sources of information, such as the child's school records. Also, he determined Gail provided "inconsistent" information about the alleged abuse she suffered. Dr. Katz offered alternate explanations for the child's behavioral changes and suicidal ideations, although he did not meet with or evaluate her. When asked on direct

examination if he could opine whether Gail's symptoms could, "within a reasonable degree of psychological certainty, indicate that [Gail] was sexually abused," Dr. Katz simply answered, "No."

On cross-examination, Dr. Katz acknowledged that when he reached out to D.P., she would not participate in the evaluation and that defendant would not speak with him. Moreover, he testified that Gail's behavioral symptoms could have resulted from sexual abuse.

With defendant's consent, the judge admitted into evidence and reviewed Gail's videotaped police interview. After considering this evidence, the judge remarked:

> [Gail's] statements during the [SVU[2]] interview as seen on the video showed her to be . . . shy, embarrassed. But, she was credible. Her demeanor was credible. She did not embellish. She did not exaggerate. Her comments were plausible. She didn't seem to be making an effort to have the interviewer believe her.
>
>     . . . .
>
> She didn't volunteer any information about the abuse. I believe . . . everything she said was in answer to a question and sometimes specific questions asked.
>
> She certainly didn't seem to have any agenda of convincing the interviewer that she was sexually

---

[2] This refers to the Special Victims Unit of the Hudson County Prosecutor's Office.

abused. She never mentioned the incident when she was about seven years old until the interviewer asked her, "Was there anything else?" And then she said, "Well, when I was seven." . . . I wouldn't call it testimony. Her remarks and demeanor during that interview were totally credible.

When the fact-finding hearing concluded on May 2, 2019, the judge rendered an oral decision. She credited Dr. Steffey's testimony, noting the doctor worked in pediatrics with an emphasis in child abuse for over nine years and had qualified as an expert in other courts. The judge acknowledged this expert "testified that her purpose for examining [Gail] or conducting the evaluation was for diagnosis and recommendation for treatment." In assessing the doctor's testimony, the judge commented:

> Pediatricians deal with the whole child's medical diagnoses, and evaluations include any symptoms the child might have physically or psychologically . . . . She explained that the scope of the medical exam that she performed on [Gail] includes the scope of psycho-social issues because it impacts the child's welfare.
>
> She wrote a report clinically supporting the sexual abuse of [Gail]. And recommending therapy for the child . . . . [T]he doctor noted . . . [Gail] had [] behavioral changes after the abuse, a low mood.
>
> So there were concerns about depression, thoughts of self-injury, and [she] had cut herself and actually been hospitalized for cutting in the past . . . . She talked about the body of medical literature in child sexual abuse that recognized those symptoms as possible

causes of - - or possible results of sexual abuse of children.

. . . .

So the doctor was not clear that any one of those symptoms was caused or solely caused by the sexual abuse. But she did find that the symptoms were clinically significant.

Next, the judge noted, "what we have here are . . . consistent allegations of [Gail] that she was sexually abused by [defendant] when she was [twelve] years old. The . . . abuse at age seven . . . , there's nothing to assume it was fabricated." Additionally, the judge stated:

And, [Gail's] consistent testimony . . . can't be the sole basis for a finding of abuse and neglect. In terms of corroboration, the video tape was very helpful to the court. Because, while the court acknowledges that defense did not get an opportunity to cross examine [Gail], the court and counsel had an opportunity to observe that video tape for over 30 minutes, observe [Gail].

. . . .

I would say they were a hybrid of out-of-court and in-court statements. Because we did have the opportunity to observe her demeanor for [thirty] minutes in response to questions asked by a neutral, trained questioner.

Regarding Dr. Katz's testimony, the judge found this expert "did not ever meet [Gail] or any of the parties. He reviewed the records and his testimony

8

was, in essence, a critique of the conclusions and methods of [Dr.] Steffey's evaluation." The judge observed that Dr. Katz

> questioned why Doctor Steffey didn't pursue more questions with regard to the depression, attempt to interview other family members. She did . . . interview the father . . . . [Dr. Katz] talked about inconsistencies.
>
> . . . .
>
> [H]e termed some of the differences as inconsistencies. The examples he gave -- the court doesn't believe any of them were inconsistencies. What they were, were piecemeal disclosures [by Gail].

Additionally, the judge determined Dr. Katz

> basically agreed with Doctor Steffey with regard to the . . . symptoms of cutting, depression and so forth that they could have been caused by sexual abuse.
>
> Or they could have been caused by other traumatic events. But Doctor Katz did acknowledge in his testimony that he believed that . . . determining the causation of symptoms such as cutting is not as important as treating the symptoms. And, that by implication, the recommendation by Doctor Steffey was appropriate, which was therapy . . . . Doctor Katz was asked to give an opinion on whether there was sexual abuse.
>
> And he testified, "I cannot give an opinion, I don't have enough information." Basically . . . Doctor Katz was saying . . . it would have been very helpful if Doctor Steffey had asked more [questions]. But, she was very clear about her purpose of her examination. She's a medical doctor. But most importantly, a pediatrician

9

who specializes in abused children and very frequently, sexually abused children.

Regarding D.P.'s testimony, the judge found this "testimony was really not that helpful to the court. It basically confirmed what [Gail] had said. And, I think that was the value of the testimony." The record further reflects the testimony of the Division's caseworker and a permanency worker were of limited assistance to the trial court.

After canvassing the proofs in this matter, the judge concluded, "[Gail's] consistent recitation of the abuse corroborated by her demeanor and answers visible in the video and the testimony of Doctor Steffey are sufficient to corroborate and the court finds that [defendant] did sexually abuse [Gail]." The judge clarified her conclusion to a certain extent, stating, Dr. Steffey's "opinion was sexual abuse was clinically substantiated and the child should have therapy. So, we actually have . . . two things that corroborate [Gail]'s out-court statements. And, . . . <u>Doctor Steffey's testimony alone, this [c]ourt finds, would be sufficient corroboration.</u>" (Emphasis added). By way of further clarification, the judge found that although Gail's allegations of sexual abuse were consistent, they "can't be the sole basis for a finding of abuse and neglect." Considering the child's consistent statements and Doctor Steffey's testimony, the judge found there was sufficient corroboration "that [defendant] did sexually abuse [Gail]."

10

On appeal, defendant raises the following arguments for our consideration:

> THE JUDGMENT SHOULD BE REVERSED BECAUSE THE TRIAL COURT MISINTERPRETED AND MISAPPLIED N.J.S.A. 9:6-8.46(a)(4) AND NEW JERSEY CASELAW, AND DENIED L.M. HIS DUE PROCESS RIGHT TO CONFRONTATION BY RELYING UPON THE CHILD'S OUT OF COURT STATEMENTS TO SUPPORT ITS ABUSE FINDING ON A RECORD DEVOID OF INDEPENDENTLY ADMISSIBLE EVIDENCE LEGALLY SUFFICIENT TO CORROBORATE SAME.
>
> THE TRIAL COURT'S CONCLUSION THAT [GAIL]'S VIDEOTAPED OUT[-]OF[-]COURT STATEMENTS CORROBORATED HER OWN OUT[-]OF[-]COURT STATEMENTS, AND THAT THEY WERE AKIN TO TESTIMONY AND WERE LEGALLY SUFFICIENT TO SUPPORT A FINDING OF ABUSE, WAS LEGAL ERROR AND DEPRIVED L.M. OF HIS DUE PROCESS CONFRONTATION RIGHT.
>
> THE TRIAL COURT'S CONCLUSION THAT [GAIL]'S OUT OF COURT STATEMENTS WERE CORROBORATED BY DR. STEFFEY'S TESTIMONY WAS LEGAL ERROR BECAUSE STEFFEY'S OPINIONS WERE DERIVED ENTIRELY FROM THE CHILD'S OUT OF COURT STATEMENTS, PRESUMED BY STEFFEY TO BE TRUE, STEFFEY COULD NOT CONCLUDE THAT [GAIL'S] SYMPTOMS WERE CAUSED BY ABUSE, THE EVALUATION FELL FAR BELOW THIS STATE'S STANDARDS FOR FORENSIC EVALUATIONS, AND THE TRIAL COURT'S CONSIDERATION OF THIS EVIDENCE WAS

11

TAINTED BY ITS ERRONEOUS CONCLUSION THAT [GAIL'S] SVU STATEMENTS WERE A FORM OF TESTIMONY.

The Law Guardian joins with the Division in opposing these points on appeal, and in arguing that we should affirm the trial court's decision.

As a threshold matter, we discern no abuse of discretion in the judge's decision to qualify Dr. Steffey as an expert in the area of child sexual abuse. See Townsend v. Pierre, 221 N.J. 36, 52 (2015); State v. Torres, 183 N.J. 554, 572 (2005) ("The trial court has discretion in determining the sufficiency of the expert's qualifications and [its decision] will be reviewed only for manifest error and injustice."). To the extent defendant challenges Dr. Steffey's qualifications, his challenge is wholly belied by the record of the doctor's extensive education, training, and experience. Additionally, we note the judge qualified Dr. Steffey as an expert only after she permitted the defense to extensively voir dire the doctor.

Regarding defendant's argument that the trial court improperly relied upon Gail's out-of-court statement to support its abuse finding, again we are not convinced.

The pertinent legal standards under Title Nine that we apply here are well established. An abused or neglected child is defined by statute as one under the

12

age of eighteen whose parent or guardian "commits or allows to be committed an act of sexual abuse against the child." N.J.S.A. 9:6-8.21(c)(3). A parent or guardian is defined by statute as "any natural parent, adoptive parent, resource family parent, stepparent, paramour of a parent, or any person, who has assumed responsibility for the care, custody, or control of a child or upon whom there is a legal duty for such care." N.J.S.A. 9:6-8.21(a).

The Division "must prove that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). Importantly, Title Nine contains a special exception to the hearsay doctrine, as set forth in N.J.S.A. 9:6-8.46(a)(4). That exception prescribes that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.45(a)(4). Accordingly, Gail's hearsay statements of sexual abuse not only were admissible but could provide a basis for a finding of abuse, so long as they were corroborated.

"[C]orroborative evidence 'need only provide support for the out-of-court statements.'" N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003) (quoting N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002)). There must be some evidence in addition to the child's statement itself, and such evidence may be circumstantial. N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 522 (App. Div. 2017).

The "most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence," N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 157 (App. Div. 2018) (quoting L.A., 357 N.J. Super. at 166) (emphasis added), or evidence of corroborating behavior by the child, N.B., 452 N.J. Super. at 522. However, corroborative evidence need not be unassailable or conclusive. Id. at 521 (citing L.A., 357 N.J. Super. at 166).

In Z.P.R., we noted that, in cases of sexual abuse, such as the present matter,

> [t]he child victim is often the only eyewitness to the crime, and physical corroboration is rare because the sex offenses committed against children tend to be nonviolent offenses such as petting, exhibitionism, fondling . . . . Consequently, in order to give any real effect to the child victim hearsay statute, the

14

corroboration requirement must reasonably be held to include indirect evidence of abuse.

[351 N.J. Super. at 436 (internal citation omitted).]

We also have made clear that an expert's opinion can be sufficient corroboration. See N.J. Div. of Child Prot. & Permanency v. I.B., 441 N.J. Super. 585, 598 (App. Div. 2015). Psychological evaluations, like medical opinions, "generally 'entail[ ] the exercise of subjective judgment rather than a straightforward, simple diagnosis based upon objective criteria or one upon which reasonable professionals could not differ.'" A.D., 455 N.J. Super. at 159 (quoting N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 501 (App. Div. 2016)). An evaluation of a mental state is among the most "complex diagnoses." In re Commitment of G.G.N., 372 N.J. Super. 42, 56 (App. Div. 2004). For this reason, we have discouraged judges from admitting medical reports from a non-testifying expert "where the opponent will be deprived of an opportunity to cross-examine the declarant on a critical issue such as the basis for the diagnosis or cause of the condition in question." Konop v. Rosen, 425 N.J. Super. 391, 405 (App. Div. 2012) (quoting Nowacki v. Cmty. Med. Ctr., 279 N.J. Super. 276, 282-83 (App. Div. 1995)).

Here, Dr. Steffey was subjected to the rigors of cross-examination and testified that Gail exhibited "clinically significant" behavioral and emotional

15

symptoms, including depression, suicidal ideation, for which the child had been hospitalized, poor school performance, difficulty sleeping, and "self-injury by cutting herself." Further, Dr. Steffey physically observed ten healed scars on one of Gail's arms, and Gail admitted her scars resulted from her cutting. As the judge aptly recognized, Dr. Steffey's "purpose for examining Gail or conducting the evaluation was for diagnosis and [to provide a] recommendation for treatment." Under these circumstances, and given Dr. Steffey's background and training, it was not error for the judge to credit the doctor's expert opinion that Gail's symptoms were consistent with a child who experienced sexual abuse. Likewise, we are satisfied the judge did not err by finding Dr. Steffey's testimony served as indirect corroboration of the child's allegations of sexual abuse.

In N.B., 452 N.J. Super. at 522, we cautioned that "courts must protect against conflating a statement's reliability with corroboration." Moreover, "consistency alone does not constitute corroboration." Id. at 523. In that regard, we do not agree with the trial court's fleeting comments that Gail's recorded police interview constituted corroboration of her allegations of abuse, notwithstanding the judge's finding that the child's videotaped statements were credible and in response to questions posed "by a neutral trained questioner."

16

However, having carefully reviewed the fuller record, we are satisfied the judge understood she could not rely exclusively on Gail's police interview to find defendant sexually abused the child. Our determination on this issue is bolstered by the judge's specific findings that Gail's consistent statements "can't be the sole basis for a finding of abuse and neglect," and importantly, "[Dr.] Steffey's testimony alone . . . would be sufficient corroboration."

Our scope of review of the Family Part judge's fact-finding determination of abuse or neglect is limited. We must defer to the factual findings of the Family Part if they are sustained by "adequate, substantial, and credible evidence" in the record. N.B., 452 N.J. Super. at 521. That deference is justified because of the Family Part's "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010). The reviewing court grants particular deference to the trial court's credibility determinations, and only overturns its determinations regarding the underlying facts and their implications when the "findings went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (internal quotation omitted). Applying these well-settled principles, we perceive no basis to disturb the trial judge's finding

that the Division proved by a preponderance of evidence defendant sexually abused his stepdaughter, as contemplated under N.J.S.A. 9:6-8.21(c)(3).

To the extent we have not addressed defendant's remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION