# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3007-17T2
                 A-3088-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.C. and D.R.,

     Defendants-Appellants.

_____

IN THE MATTER OF S.C., Jr.,

     a Minor.

_____

Submitted November 14, 2019 – Decided November 21, 2019

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FN-01-0389-16.

Joseph E. Krakora, Public Defender, attorney for appellant S.C. (Jared Isaac Mancinelli, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant D.R. (Dana A. Citron, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Robert George Amrich, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Damen John Thiel, Designated Counsel, on the brief).

PER CURIAM

Defendants S.C. and D.R.[1] appeal from the October 24, 2017 Family Part decision[2] determining that they abused S.C.'s seven-year-old son, S.C., Jr. (Steven), by D.R. twisting his ear until it bled and had to be drained multiple times, and by both defendants striking him in the face and causing him to suffer bruises and contusions. Defendants assert there was insufficient evidence in the

---

[1] We refer to defendants by initials, and to their child by a fictitious name, to protect their privacy. R. 1:38-3(d)(12). S.C. is the child's biological father. D.R. is S.C.'s girlfriend. D.R. has three children of her own, and these children are not involved in the current appeal.

[2] This decision became appealable as of right after the trial court entered a final order terminating the litigation on January 29, 2018.

record to support Judge W. Todd Miller's finding that this conduct constituted abuse under N.J.S.A. 9:6-8.21(c)(4)(b). D.R. also contends her due process rights were violated by the procedures a different judge followed in conducting an in camera interview with Steven prior to the fact-finding hearing. The Law Guardian supports Judge Miller's finding that the Division of Child Protection and Permanency (Division) met its burden of proving abuse by a preponderance of the evidence. Based upon our review of the record and applicable law, we affirm for the reasons articulated by Judge Miller in his thorough and thoughtful written opinion of October 24, 2017.

For the six years prior to 2016, Steven lived with his paternal grandmother. In 2016, he began to reside with S.C., D.R., and D.R.'s three children. In June 2016, the Division filed a complaint for care and custody of Steven after he appeared at school with extensive injuries to his face, ears, head, and chest. Although the Division was unable to establish abuse or neglect at that time, the court granted its application for care and supervision on August 13, 2016.

One week later, a doctor's office contacted the Division to report that Steven had been at the emergency room on August 19, 2016 because his left ear

was extremely swollen. The next day, a nurse called the Division after Steven reported that D.R. had beaten him on multiple occasions.

The Division conducted an investigation on August 21, and found that the child had an enlarged left ear that was bleeding. There was a bruise under Steven's eye, which was the size of a silver dollar. The child also had a linear bruise underneath his right eye and on the top of the right side of his forehead. Steven told the Division workers that D.R. inflicted these wounds by pinching and twisting his ear and by striking him in the face. The workers took photographs of Steven's injuries and they were admitted in evidence at the hearing.

The child stated that S.C. told him to tell the doctors the bruises were the result of falling off his scooter, and that his ear injury was caused by a bug bite. Steven's treating physician, Dr. David McBride, informed the workers that the child had a great deal of blood in his ear that needed to be drained. Dr. McBride stated it was difficult for him to tell if the bruises, cuts, and ear injury were from physical abuse.

Steven's grandmother stated she picked up Steven on August 19, and saw his injuries. The child told her that D.R. had punched him and pulled his ear. The grandmother had previously scheduled a court hearing to seek custody of

4

Steven for August 20 and following that hearing, the court granted custody of the child to her, with defendants having only supervised weekly visitation. When interviewed by the Division workers, S.C. and D.R. claimed that Steven fell off his scooter a few days before his emergency room visit, and denied causing the child's injuries.

After the custody hearing, Steven told a Division worker that he hurt his ear by falling off his scooter, and got the bruises on his head because he fell against a table while putting on his flip flops. At that point, however, the child did not know that his grandmother would be taking custody of him. When the child spoke a few days later to Dr. Stephanie Lanese of the New Jersey CARES Institute, he told her that he lied because he was afraid D.R. would hurt him if he told the workers the truth about what happened to him. Steven reported that D.R. hurt his ear by twisting it and that both defendants had hit him in the face.

Dr. Lanese, who the Division qualified as an expert in child abuse pediatrics, opined that Steven's ear injury was entirely consistent with his claim that D.R. had twisted it. As Judge Miller found, Dr. Lanese described his condition "as [a] cauliflower ear that occurs from blunt trauma to the ear. The injury is common with wrestling or boxing. The inside ridges inside the ear are

severely impacted and the entire ear swells. It can cause long-term damage to the ear if not treated properly."

Dr. Lanese also concluded that Steven's bruises could not have been caused by falling off a scooter or hitting his head on a table. This was so because the child had "no preventative or defensive abrasions on his forearms or knees or shins that are acute and of similar age to [the wounds] to his face and ears." It was also highly unusual that there were bruises on both sides of Steven's face, but no injury to his nose. Dr. Lanese also concluded that the psychological impact of the beatings might have even more of a significant impact on the child's well-being than the physical injuries he sustained.

Prior to the fact-finding hearing, a different judge conducted an in camera interview with Steven at S.C.'s request. D.R.'s attorney also consented to the interview, and both defendants were given the opportunity to submit questions for the judge to ask. Neither defendant took advantage of this opportunity and, when the judge met with the child, the only attorney who appeared in court was the Law Guardian. Steven told the judge D.R. had twisted his ear and that both defendants struck him in the face.

Defendants did not testify at the hearing, and did not present an expert witness to counter Dr. Lanese's testimony that Steven was a victim of physical

6

abuse.  Instead, S.C. called Dr. McBride as a fact witness.  Dr. McBride testified that he did not believe that the ear injury was caused by twisting or pinching because the child had other injuries to his face that were not caused in that fashion.  However, Dr. McBride admitted he merely treated Steven's injuries, and did not investigate their cause, preferring to "let the authorities do their job." S.C. also called a Division worker to testify that Steven reported in October 2014 that his grandmother would punish him by striking him with a belt. However, the worker stated that the child had no marks or bruises consistent with this claim.

In his lengthy written decision, Judge Miller found the Division had established by a preponderance of the evidence that defendants abused Steven when D.R. twisted and pinched his ear, causing it to swell and bleed, and when both defendants left bruises on his face by punching him.  In so ruling, the judge found Dr. Lanese's uncontradicted expert testimony "to be very trustworthy and credible."  This appeal followed.

On appeal, both defendants argue the Division failed to prove by a preponderance of the evidence that they caused Steven's injuries.  Instead, they assert the child sustained a cauliflower ear, and bruises to both sides of his face,

but no defensive or preventative injuries, from falling off his scooter.[3]  We disagree.

Our task as an appellate court is to determine whether the decision of the family court is supported by substantial credible evidence in the record and is consistent with applicable law.  Cesare v. Cesare, 154 N.J. 394, 412 (1998).  We owe particular deference to a trial judge's credibility determinations and to "the family courts' special jurisdiction and expertise[.]"  Id. at 413.  Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision if we had heard the case in the first instance.  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).  "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision.  N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).

---

[3] In the alternative, defendants claim that the child's grandmother either caused the injuries or persuaded Steven to lie and say that defendants were responsible. This argument lacks sufficient merit to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E).

Through the admission of "competent, material and relevant evidence," the Division must prove by a preponderance of the evidence that the child was abused or neglected. N.J.S.A. 9:6-8.46(b). In pertinent part, N.J.S.A. 9:6-8.21(c)(4)(b) defines an "abused or neglected child" as:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his [or her] parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]

Each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive" and "idiosyncratic." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011). Both the nature of the injury inflicted and the conduct should be reviewed within the context of the family's circumstances at that moment. See Dep't of Children & Families, Div. of Youth & Family Servs. v. C.H., 416 N.J. Super. 414, 416 (App. Div. 2010).

Here, the evidence was overwhelming that defendants caused Steven's serious injuries. As Dr. Lanese testified without contradiction, if the child had fallen off a scooter, he would have sustained defensive injuries from trying to break his fall. Instead, the nature of Steven's injuries were entirely consistent

9

with his explanation to Dr. Lanese that D.R. caused his cauliflower ear by twisting and pinching it, and that both defendants struck him in the face and left him with bruises and abrasions. All of the child's injuries were amply documented by the photographs submitted in evidence. Under these circumstances, we discern no basis for disturbing Judge Miller's finding that defendants abused the seven-year-old child.

We also reject D.R.'s argument that the first judge's in camera interview with Steven did not comport with all of the requirements of N.J. Div. of Child Prot. & Permanency v. C.W., 435 N.J. Super. 130 (App. Div. 2014), and N.J.S.A. 2A:84A-32.4. D.R. consented to the interview, and the court gave her the opportunity to pose questions for the court to ask. D.R. did not take advantage of this opportunity, and did not even appear in court for the interview. However, she now argues that the judge should have made specific findings concerning the need for the interview, ensured that her attorney was present for it, and permitted her to cross-examine the child. Because this did not occur, D.R. argues that her due process rights were violated. Again, we disagree.

When an interview with a child is conducted in a Title Nine proceeding and a defendant claims the interview violated due process, the court "must consider whether [the defendant] was given a sufficient opportunity to confront

10

A-3007-17T2

the Division's evidence in light of the interview procedures followed by the judge." C.W., 435 N.J. Super. at 145. "The analysis is twofold: was [the defendant] prejudiced by the procedure utilized, and did the Division's other evidence satisfy its burden of proof." Ibid.

Under the first prong of C.W. there is no evidence that the manner in which the interview was conducted prejudiced D.R., who had the full opportunity to question the child but declined to do so. Steven's statement during the interview that defendants harmed him also merely duplicated the similar report he gave to Dr. Lanese. Additionally, pursuant to the second prong of C.W., there was ample evidence in the record aside from Steven's interview to support Judge Miller's finding that D.R. (and S.C.) abused the child. Therefore, D.R. was not deprived of due process.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3007-17T2