**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0542-12T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

C.W.,

    Defendant-Appellant.

_____

IN THE MATTER OF I.N.W., a minor.

_____

APPROVED FOR PUBLICATION

March 27, 2014

APPELLATE DIVISION

Submitted February 12, 2014 - Decided March 27, 2014

Before Judges Lihotz, Maven and Hoffman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-339-12.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert H. McGuigan, Designated Counsel, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Lewis A. Scheindlin, Assistant Attorney General, of counsel; Andrea R. Fonseca-Romen, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor I.N.W. (Lisa M. Black, Designated Counsel, on the brief).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

We address the requisite procedures Family Part judges must follow to protect a defendant's due process rights when a child's testimony is sought in a protective services action. We hold that in any proceeding filed pursuant to N.J.S.A. 9:6-8.2(c), when a defendant objects to utilizing an alternative to the child's in-court testimony, the judge must adhere to the statutory procedures outlined in N.J.S.A. 2A:84A-32.4, prior to allowing in camera testimony of a child-witness.

In this matter, defendant C.W. appeals from two Family Part orders entered in this Title Nine action initiated by plaintiff, the Division of Youth and Family Services (Division).[1] The first order under review was filed on April 20, 2012, following trial, and included the judge's findings that C.W.'s daughter, I.N.W., was an abused or neglected child pursuant to N.J.S.A. 9:6-8.21(c), and C.W. "failed to provide a minimum degree of care for the child due to her drinking problem."[2] The second order,

_____

[1]    On June 29, 2012, the Governor signed into law A-3101, which reorganizes the Department of Children and Families, including the renaming of the Division as the Division of Child Protection and Permanency. L. 2012, c. 16, eff. June 29, 2012 (amending N.J.S.A. 9:3A-10(b)).

[2]    K.R., C.W.'s boyfriend who resided in the household, was also a named defendant in the litigation. However, because he
(continued)

filed on August 15, 2012, placed I.N.W. in the custody of her adult sibling, awarded custody of her younger sibling to a paternal relative, and concluded the litigation. On appeal, C.W. challenges the sufficiency of the evidence and argues the trial judge erred in grounding her factual findings upon then seventeen-year-old I.N.W.'s in camera interview. Although the procedure followed in this matter did not conform to the requirements of N.J.S.A. 2A:84A-32.4, defendant did not object to the use of the alternate procedure. Further, the evidence of record, after excluding I.N.W.'s in camera statements, amply supports the judge's findings of abuse and neglect. Accordingly, we conclude C.W.'s due process rights were not impinged and affirm.

At trial, the Division chose to admit documentary evidence, without objection from defendants or the Law Guardian. This included six multi-page exhibits containing: prior Division records beginning in 1996, substantiating incidents of abuse or neglect by C.W.; Division case notes and reports, redacted by agreement, recording the Division's investigation of the instant referral and interviews regarding the alleged assault of I.N.W. by C.W. and K.R.; and a report prepared by the Gloucester

_____

(continued)
has not participated in this appeal, we omit the order's provisions addressing his conduct.

A-0542-12T4

Township Police Department (GTPD) documenting the investigation of the alleged assault by C.W. and K.R., along with photographs depicting I.N.W.'s injuries.  The Division offered no witnesses. Neither C.W. nor K.R. testified.  However, K.R. presented testimony from his brother and a friend who were present in the home when the subject altercation occurred.  At the close of evidence, the trial judge spoke to I.N.W. in chambers, while counsel and the parties listened, as the interview was broadcast into the courtroom.  Prior to the interview, the judge had requested all parties to submit questions to be posed to the child.

These facts are found in the exhibits admitted into evidence.  The GTPD contacted the Division on the evening of December 2, 2011, when sixteen-year-old I.N.W. appeared at the police station with her adult sibling.  I.N.W. reported C.W. and K.R. had physically assaulted her at a time when the two had been drinking.

Family Services Specialist Demetrius Briggs and another Division caseworker responded.  The Division's case notes recited the information obtained from the police station interviews of I.N.W. and her older sibling.  At that time, Briggs also recorded his observations of I.N.W.'s physical appearance, stating she had "several scratches" on her face,

including "a scratch on the left cheek approximately an inch and a half [sic] long; a linear abrasion approximately three inches long on the right side of her neck; an abrasion on the back/left side of her neck; and bruising on the left jaw area."  A police officer photographed I.N.W.'s injuries.

In her interview with Briggs, I.N.W. stated when she returned home from school, C.W. and K.R. had been drinking.  She stated "everyday" C.W. and K.R. drink "beer and vodka" before she and her sibling return home from school and "both become very angry when they drink[]."

C.W. and her youngest child began joking, but the banter turned into an argument when C.W. "suddenly became irritated and started yelling," purportedly because I.N.W. began laughing. I.N.W. intended to go to the library and may have "called her mother crazy," as she left the residence.  C.W. followed I.N.W. outside and "began hitting her while her back was turned."  C.W. pushed I.N.W. to the ground and "continued to punch and hit her, knocking her into the chair on the porch."  I.N.W. "reported as she was on the ground, her mother grabbed her by the throat and was strangling her."  I.N.W "grabbed [C.W.]'s wrists," in an attempt to try to remove her hands from her neck.  When C.W. released I.N.W., she got up and ran to her friend's home and never returned.  I.N.W. also told Briggs of an earlier incident

A-0542-12T4

when K.R. struck her. Ultimately, I.N.W.'s older sibling was called and drove her to the police station.

That night, Briggs and his co-worker went to the home, accompanied by the GTPD investigating officers. Briggs removed I.N.W. and her younger sibling from their parents' care and placed them in a resource home. N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12. Thereafter, the Family Part granted the Division custody, care and supervision of both children.

Briggs also recorded the following notes after his December 2, 2011 investigation. "From the time workers entered the home there was a very strong smell of alcohol" emanating from C.W., which police also confirmed. Although coherent, C.W.'s "speech appeared to be slurred and she smelled of alcohol." However, no testing was performed to confirm this suspicion. C.W. and K.R. denied drinking before 10:00 p.m.; C.W. stated at that time she had consumed three beers. C.W. acknowledged she drinks "maybe on the weekends, or when a football game is on[,]" but denied being an alcoholic and asserted her family had no previous involvement with the Division. Briggs inspected the premises and found "an empty Genuine Draft six[-]pack box in the kitchen and half a bottle of beer in the refrigerator." Additionally, he observed "an empty vodka bottle and three empty beer bottles in the trash can" of C.W.'s bedroom.

A-0542-12T4

Briggs interviewed C.W. in the dining room, while his co-worker interviewed K.R. on the steps. C.W. explained I.N.W. was "very disrespectful" earlier in the day. C.W. told her to complete her chores, but I.N.W. "was not listening and was just laughing" and mimicking her. After I.N.W. left the house, again saying something disrespectful, C.W. followed her outside to tell her such behavior was unacceptable. C.W. told Briggs I.N.W. "took a swipe," scratching the right side of her jaw line. The police report identified "redness and some swelling to [C.W.'s] bottom right jaw." C.W. told Briggs I.N.W. scratched her, but he noted the scratch was "not very visible"; rather, C.W. "appeared to be attempting to make a scratch and/or mark appear on her own face" during the interview.

C.W. admitted she placed her hands on I.N.W.'s chest and pushed her against a wall, as a defensive maneuver. However, she denied I.N.W. fell or was pushed to the ground. She also maintained K.R. did not punch I.N.W. and insisted I.N.W. had no scratches or abrasions when she left the house, subsequently she "may have scratched herself."

K.R.'s two trial witnesses described their observations of the day's events. However, both admitted they did not know when and how the "little tussle" between C.W. and I.N.W. began, as

A-0542-12T4

they did not see the entire altercation. Neither witness observed K.R. strike anyone.

At the close of testimony, the judge interviewed I.N.W. in chambers. No other party was present. The details of the events described in this interview vary slightly from those recorded by Briggs. Despite the minor discrepancies, I.N.W. consistently reported the significant events the trial judge relied upon to support her legal conclusions.

The judge issued a written opinion on April 20, 2012. Crediting I.N.W.'s testimony, she found the Division had proven by a preponderance of the evidence that I.N.W. was "an abused and/or neglected child within the meaning of N.J.S.A. 9:6-8.21 et seq." The judge memorialized her conclusions in the April 20, 2012 order, and conducted a dispositional hearing immediately thereafter, to address the children's placements. I.N.W. remained with her resource family until the school year concluded, when she moved to her older sibling's home. Her younger sibling was placed with a paternal relative, where she remained. On August 15, after a follow-up dispositional hearing, the judge found it was not safe to return either child to C.W.'s care, as she was homeless and only recently commenced substance abuse treatment. The same day, the trial court entered the final order, provided I.N.W. would remain in the

custody of her sibling, her younger sibling would remain with relatives, and terminated the litigation. This appeal ensued.

Our review of determinations made following a bench trial is limited. "A reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by 'adequate, substantial and credible evidence' on the record." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)); Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We afford particular deference "to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M, 211 N.J. 420, 448 (2012). This "'feel of the case' . . . can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting M.M., supra, 189 N.J. at 293). Consequently, a family court's factual findings "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice[.]'" J.T., supra, 269 N.J. Super. at 188 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). See also N.J. Div. of Youth & Family Servs. v.

F.M., 375 N.J. Super. 235, 259 (App. Div. 2005) ("When the credibility of witnesses is an important factor, the trial court's conclusions must be given great weight and must be accepted by the appellate court unless clearly lacking in reasonable support.").

Reversal is warranted only when a trial judge's findings are "'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Rova Farms, supra, 65 N.J. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div.), certif. denied, 40 N.J. 221 (1963)). Further, the trial judge's "interpretation of the law and the legal consequences that flow from established facts" are not subject to deference and are reviewed de novo by this court de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

On appeal, C.W. argues the judge erred by conducting an in camera interview of then seventeen-year-old I.N.W., "rather than requiring her to testify," a practice which C.W. suggests contravenes the plain language of N.J.S.A. 2A:84A-32.4, and "abrogate[s] [her] due process rights." C.W. also maintains the judge failed to administer an oath to I.N.W. and merely discussed with her the importance of telling the truth and

obtained her assurance she understood the need to "be honest[.]" C.W. insists these defects require the trial judge's factual findings be set aside.

The Division and the Law Guardian argue any error resulting from the in camera interview was harmless. Alternatively, the Division and Law Guardian maintain the procedures employed by the trial judge precisely complied with Rule 5:12-4(b), which grants the judge discretion to take the child's testimony "privately in chambers," and were not error.

We agree the statute was not followed in this proceeding. I.N.W. was over sixteen years-of-age and the record on appeal does not include judicial findings to support the necessity of an in camera proceeding in lieu of the child's trial testimony. N.J.S.A. 2A:84A-32.4. Nevertheless, we determine the record reflects sufficient credible evidence, aside from I.N.W.'s in camera statements, which fully support the trial judge's conclusions.

"Our decisional law has . . . recognized the State's interests in eliciting testimony of child abuse . . . ." N.J. Div. of Youth & Family Servs. v. J.B., 120 N.J. 112, 126 (1990). In that regard, N.J.S.A. 2A:84A-32.4 provides the framework for taking a child's closed circuit testimony in abuse and neglect proceedings, stating:

a.  . . . in any action alleging an abused or neglected child under [N.J.S.A. 9:6-8.21 to -8.73], the court may, on motion and after conducting a hearing in camera, order the taking of the testimony of a witness on closed circuit television at the trial, out of the view of . . . defendant, . . . as provided in subsection b. of this section.

b.  An order under this section may be made only if the court finds that the witness is 16 years of age or younger and that there is a substantial likelihood that the witness would suffer severe emotional or mental distress if required to testify in open court.  The order shall be specific as to whether the witness will testify outside the presence of . . . defendant, . . . and shall be based on specific findings relating to the impact of the presence of each.

. . . .

d.  The defendant's counsel shall be present at the taking of testimony in camera.

. . . .

The statute also applies to specified criminal proceedings, when the testimony of a child-witness is necessary.  Ibid. Certainly, the statutory protections are designed to preserve a criminal defendant's right to confront witnesses, as granted by the Sixth Amendment of our federal Constitution through the Fourteenth Amendment, U.S. Const. amend. VI and XIV, and by the New Jersey Constitution, N.J. Const., Art. I, par. 10.  In re B.F., 230 N.J. Super. 153, 158 (App. Div. 1989) (citing State v. Washington, 202 N.J. Super. 187, 191 (App. Div. 1985)).

The basic elements of confrontation are physical presence, oath, cross-examination, and observation of demeanor by the trier of fact. [Maryland v.] Craig, [] 497 U.S. [836,] 846, 110 S. Ct. [3157,] 3163, 111 L. Ed. 2d [666,] 678 [(1990)]. However, "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Id. at 845, 110 S. Ct. at 3163, 111 L. Ed. 2d at 678.

[State v. Smith, 158 N.J. 376, 385 (1999).]

The focus in civil matters, such as this one, differs. "[A]lthough the Sixth Amendment right to confrontation is not applicable in civil proceedings, due process guarantees civil litigants a measure of confrontation." A.B. v. Y.Z., 184 N.J. 599, 604 (2005) (citation omitted). At the same time, public policy requires the judiciary to prevent further victimization or traumatization of young children called to testify in court proceedings. Our Supreme Court has cautioned a "child's fear . . . prevent[s] the proper functioning of the truth-finding process[.]" Smith, supra, 158 N.J. at 387.

Moreover, our court rules contain provisions governing proceedings initiated by the Division, when a child's testimony may be necessary. See Rule 5:12-1 to -7. The Division and Law Guardian rely on Rule 5:12-4(b), which provides:

Hearings and trials shall be conducted in private. In the child's best interests, the

> court may order that a child not be present at a hearing or trial unless the child's testimony is necessary for the determination of the matter. The testimony of a child may, in the court's discretion, be taken privately in chambers or under such protective orders as the court may provide.

See also N.J. Div. of Youth & Family Servs. v. S.S., 185 N.J. Super. 3, 6 (App. Div.) (approving use of "the somewhat novel procedure utilized by the judge" for interviewing a child-witness in chambers with the minor's law guardian present and defendant, who was charged with child abuse, permitted to submit questions he wished the judge to ask), certif. denied, 91 N.J. 572 (1982).

In considering, the Division and Law Guardian's suggestion that compliance with Rule 5:12-4(b) is all that is required when a Family Part judge exercises his or her discretion to conduct an in camera interview of a child, we have located no decisional authority regarding the application of N.J.S.A. 2A:84A-32.4 in Title Nine actions nor have we found any discussion of how the statute interfaces with the court rules governing proceedings initiated by the Division. We note both the statute and rule require the exercise of reasoned discretion, when determining whether to allow a child to be questioned using an alternative procedure, instead of being required to take the stand. See B.F., supra, 230 N.J. Super. at 158 ("[T]he decision as to

whether one is to be granted relief under the statute is in the sound discretion of the court."); see also R. 5:12-4(b). Also, both the statute and the rule require a judge to make specific findings warranting use of alternate procedures. This court has found "[t]rial judges have broad discretion in abuse and neglect cases . . . to conduct a private examination of a child." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 168 (App. Div. 2003).

Under Rule 5:12-4(b), the testimony of a child taken in chambers or under provisions of a protective order allows the judge to pursue an inquiry in a less intrusive atmosphere for a child whose "testimony is necessary for the determination of the matter." To that extent, the provisions of the rule do not conflict with N.J.S.A. 2A:84A-32.4. However, a child-witness's testimony that is necessary to determine a matter pursuant to N.J.S.A. 9:6-8.21, is expressly governed by N.J.S.A. 2A:84A-32.4. Accordingly, we conclude when a Title Nine defendant objects to utilizing a procedure other than presenting a child's in-court testimony, the trial judge must follow the requisites of N.J.S.A. 2A:84A-32.4a to -c, including first making detailed findings of the necessity of an alternative to the child's in-court testimony, N.J.S.A. 2A:84A-32.4(b). Any alternate procedures used must assure protection of a defendant's due

process rights and the order must also detail the procedures used to do so.

Also, when a minor child is summoned to testify using an alternative procedure, the judge must determine whether the child-witness is competent to testify, N.J.R.E. 601, and comprehends the need to tell the truth. Morrone v. Morrone, 44 N.J. Super. 305, 313 (App. Div. 1957). The child must be placed under oath, or instructed of the need to tell the truth and determined to understand that obligation. See State v. G.C., 188 N.J. 118, 132-33 (2006) (stating in taking testimony from a child-witness "the clearly preferred procedure would have entailed the use of an oath or oath substitute that acknowledged both the obligation to testify truthfully and that the failure to do so could result in adverse consequences").

The child-witness also must be available for cross-examination. Most assuredly, presentation of testimony from a child-witness requires sensitivity, and most parents would demur when faced with the prospect of forcing a child to appear in court. While we do not suggest every child-witness should face the unbridled interrogation of skilled counsel, we remain confident our Family Part judges may craft procedures acceptable to the parties to assure the child is not subjected to badgering

or harshness, while nonetheless protecting a defendant's due process rights.

Turning to the record in this matter, we cannot determine who initiated the in camera interview procedure. We do know that neither C.W. nor K.R. requested I.N.W. take the stand and neither objected to using this alternative procedure. The record also reflects the parties reached a consensus on the nature of the documentary evidence once the Division provided photographs corroborating I.N.W.'s injuries, such that the exhibits, as redacted, were admitted without objection. Perhaps this explains why the trial judge did not consider the statute's plain language — no one thought it necessary and the parties never questioned the use of an in camera interview of I.N.W.

However, our determination is not concluded by the apparent acceptance of the process. "Because due process guarantees civil litigants a measure of confrontation, the burden to prove the denial of such confrontation harmless . . . rests with plaintiff[], who benefited from the circumscription of defendant's right to face his accuser." A.B., supra, 184 N.J. at 605 (citing Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710 (1967)). Accordingly, we must consider whether C.W. was given a sufficient opportunity to confront the Division's evidence in light of the interview

procedures followed by the judge. The analysis is twofold: was C.W. prejudiced by the procedure utilized, and did the Division's other evidence satisfy its burden of proof. We conclude C.W. was not prejudiced by the <u>in camera</u> interview procedure because she had the opportunity to confront the Division's evidence, which standing alone proved by a preponderance of the evidence I.N.W. was an abused or neglected child.

By definition, actions under Title Nine seek to impose protective services when parental conduct jeopardizes a child's safety and security. Relevant here, a child is deemed "abused or neglected" if he or she is less than eighteen years-of-age

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]
>
> [<u>N.J.S.A.</u> 9:6-8.21(c)(4)(b).]

Specific injuries or risks, such as wounds, "[c]uts, bruises, abrasions, welts," and "[r]isk of harm due to substance abuse by

the parent/caregiver of the child" may constitute abuse and neglect. N.J.A.C. 10:129-2.2(a)6, 9, and 13.

A finding of abuse or neglect under the statute must be "based on a preponderance of the evidence," and the record must consist only of "competent, material and relevant evidence . . . ." N.J.S.A. 9:6-8.46(b)(1) and (2). Such a finding cannot be based solely on "previous statements made by the child relating to any allegation of abuse or neglect," without further corroboration. N.J.S.A. 9:6-8.46a(4).

C.W. was provided with all evidence the Division intended to rely upon to prove its case. She was also given the names of the investigating police officers and the photographs taken by police on December 2, 2011. C.W. was afforded the opportunity to present interview questions to be posed to I.N.W., and, as noted during the pre-trial conference, could have requested additional inquiries if prompted by the child's responses. The judge also advised rebuttal testimony could be offered after I.N.W.'s interview. C.W. heard I.N.W.'s interview as it was conducted, and was represented by and readily able to confer with counsel during the entire proceeding. The totality of these procedures safeguarded C.W.'s ability to consider the evidence presented by the Division to support its complaint,

allowed her to challenge that evidence, and enabled her to assist in and present her defense.

If I.N.W.'s interview statements are excluded, we easily conclude the remaining uncontroverted evidence demonstrates C.W.'s conduct resulted in I.N.W. being an abused child. See N.J. Div. of Youth & Family Servs. v. C.M., 181 N.J. Super. 190, 201 (App. Div. 1981) (when determining whether a child is abused or neglected, the court must "evaluat[e] the whole picture each part cannot be separately determined."). The Division proved C.W. struck, punched, scratched, and attempted to strangle I.N.W. on December 2, 2011, because she was angry. Although C.W. suggested I.N.W. initiated the altercation by swinging at her, that possibility does not excuse the resultant physical assault on her teenage daughter. Further, C.W.'s alcohol abuse was documented in the case notes and verified by observation of the police and the caseworkers, who found empty beer and vodka bottles in her bedroom. Subsequent substance abuse evaluations, also substantiated C.W.'s need for treatment. These facts emphasized the need for court intervention to prevent further injury to I.N.W. and her younger sibling. Based upon the totality of the evidence, we conclude the Division proved its case and any possible error resulting from the trial judge's in

camera interview of I.N.W. was not "clearly capable of producing an unjust result." R. 2:10-2.

The remaining arguments advanced by C.W. on appeal lack sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(1)(E). Following our review, we find no basis to set aside the court's orders. See A.B., supra, 184 N.J. at 606.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION