# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3617-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

E.G.,

      Defendant,

and

J.F.,

      Defendant-Appellant,

_____

IN THE MATTER OF L.B.,
a minor.

_____

Submitted October 7, 2021 – Decided February 1, 2022

Before Judges Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-0219-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Michael Pastacaldi, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Juliana L. Stiles, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title Nine abuse and neglect action, defendant J.F. appeals from an April 14, 2020 order finding that he committed an act of sexual abuse against his stepdaughter, L.B., pursuant to N.J.S.A. 9:6-8.21(c)(3). On appeal, defendant argues that the trial court committed procedural errors in conducting the victim's in camera interview that warrant reversal of the judgment against him. We affirm.

We discern the following facts from the record. L.B.'s allegations of abuse came to light in high school after she wrote an essay for her college applications, in which she recounted how she was selectively mute as a child. After her teacher inquired why she had been selectively mute, L.B. disclosed to one of her

2 <span>A-3617-19</span>

teachers and her guidance counselor that defendant, her stepfather, had sexually abused her. After L.B. made this disclosure, the school contacted the Division of Child Protection and Permanency (DCPP). L.B. told DCPP that she did not feel safe when home alone with defendant and that she was revealing the abuse now because she wanted to protect her sister who had just turned five years old, the age at which L.B.'s stepfather started abusing her.

Because the family had resided in Pennsylvania and New Jersey during the time of the abuse, L.B. was interviewed by prosecutors' offices in both states. In her interview with the Philadelphia Special Victims Unit, L.B. recounted how defendant would masturbate in front of her, watch her shower, touch her inappropriately, and how defendant once sucked on her nipples and licked her vagina while holding a pillow over her face.

On September 23, 2019, DCPP filed an Order to Show Cause (OTSC) and complaint against defendant and codefendant E.G. J.F. and E.G. are married and have two children together. E.G. is L.B.'s biological mother. On September 23, 2019, the court conducted a hearing on the OTSC, which defendant attended. L.B.'s caseworker testified, and based on her testimony, the judge granted DCPP's OTSC, finding DCPP established a prima facie showing that defendant may have abused L.B. as a child, and ruling that DCPP involvement was

3

necessary going forward. The judge ordered defendant not to return home and that he was not to have any unsupervised contact with his children.

On January 6, 2020, the court held its first case management conference with the parties. DCPP and the law guardian notified defendant's counsel that they would be presenting L.B.'s testimony at trial to support a finding that defendant sexually abused L.B. They jointly requested that L.B.'s testimony be taken in camera due to the severity of the allegations. Defendant's attorney stated he had no objection to this procedure. The judge instructed the parties to submit any questions that they wished him to pose to L.B. during her testimony. Defendant's attorney did not submit questions in advance of the in camera testimony. Nor did he object to the procedure or ask for an opportunity to cross examine L.B. at the conclusion of her testimony.

On February 11, 2020, the judge conducted the in camera interview of L.B. Although L.B. was not formally sworn in, the judge questioned her to ensure she understood her obligation to tell the truth. L.B.'s law guardian was present in chambers for the interview while the Deputy Attorney General

A-3617-19

assigned to the case and defendant were in the courtroom.[1]  The interview was recorded and live streamed into the courtroom.

L.B. testified that while she was working on her college application essay, her high school teacher encouraged her to explain why she became selectively mute.  L.B. stated that she realized that "it was probably . . . a coping mechanism for what [defendant] used to do."  She testified that she did not disclose the abuse earlier because she "didn't want [her] brother and sister to grow up without a dad."

L.B. explained that defendant began sexually abusing her when the family first moved from New York to Philadelphia when she was in kindergarten or first grade.  She described how defendant would masturbate in front of her, watch her in the shower, touch and tickle her, and masturbate while she slept, which she was aware of because she would sometimes wake up and see him doing it.  Defendant would abuse L.B. when her mother and siblings were not home.  L.B. testified that she would tell defendant to stop, but he did not listen most of the time.  She stated that in Philadelphia, defendant would only masturbate or show himself to L.B., but when her family moved to New Jersey,

---

[1]  It is unclear from the record whether defendant's counsel was also present in the courtroom during the interview, as the only appearance noted on the record was that of the Law Guardian.

defendant began touching her and tickling her. L.B. said that the last time he touched her was when she was thirteen or fourteen years old. She testified that defendant put his mouth on her and covered her face with a pillow to prevent her from screaming.

On April 14, 2020, the judge held a virtual fact-finding hearing. The judge admitted DCPP's September 16, 2019 investigation summary into evidence. DCPP offered the testimony of its case worker, Julia Gober, who interviewed L.B. and referred her to the Child Advocacy Center in Philadelphia for a forensic interview. L.B.'s statements to Gober were consistent with her in camera testimony. Gober testified, "[L.B.] indicated to me that [she] was touched inappropriately by her stepfather, and that she did feel safe with her mother in the home at the time." Gober also testified that she interviewed defendant, who denied the abuse, and L.B.'s mother, who said she was not aware of the abuse.

At the conclusion of Gober's testimony, but before the judge could issue a ruling, defendant moved to dismiss the complaint for lack of evidence. He argued L.B.'s in camera testimony was insufficient to sustain the verdict as it had not been tested by cross-examination and should therefore require

6

corroboration as with any out-of-court statement.[2] The judge denied defendant's motion. Defendant then testified that he never touched L.B. inappropriately, never performed sexual acts in front of her, never watched her in the shower, and never sexually abused her.

At the close of the trial, the judge found L.B. to be more credible and noted that she made appropriate eye contact, was responsive to questioning, and that he found no inconsistencies in her description of the events. The judge also found that L.B. had no motivation to lie about the abuse and observed that her testimony was detailed, while defendant's was brief and consisted wholly of a blanket denial of the events. Weighing the testimony, the judge concluded that DCPP proved, by a preponderance of the evidence, that defendant had abused and neglected L.B. in violation of N.J.S.A. 9:6-8.21(c)(3). The judge then entered an order reflecting his ruling. This appeal followed.

On appeal, defendant raises the following arguments:

> POINT I
>
> THE TRIAL COURT ERRED IN FAILING TO APPROPRIATELY CONDUCT AN IN CAMERA INTERVIEW OF THE CHILD PURSUANT TO

---

[2] N.J.S.A. 9:6-8.46(a)(4) states that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect."

N.J.S.A. 2A:84A-32.4 AND N.J.S.A. 2A:61-B1 THEREBY VIOLATING [DEFENDANT'S] RIGHT OF CONFRONTATION

A. [The Lower Court Erred In Effectively Barring Defendant From Cross-Examining The Child During The In Camera Interview]

POINT II

REVERSAL OF THE TRIAL COURT'S ABUSE AND NEGLECT ADJUDICATION AGAINST [DEFENDANT] IS WARRANTED AS A MATTER OF LAW BECAUSE THE TRIAL COURT ERRED IN ITS APPLICATION OF THE LAW REGARDING CORROBORATION OF THE CHILD'S OUT-OF-COURT ALLEGATIONS

POINT III

REVERSAL OF THE TRIAL COURT'S ABUSE ADJUDICATION AGAINST [DEFENDANT] IS WARRANTED AS A MATTER OF LAW BECAUSE THE TRIAL COURT ERRED WHEN IT RELIED ON FACTS NOT IN EVIDENCE

Our scope of review of a Family Part judge's finding of abuse or neglect is limited. N.J. Div. of Youth & Fam. Servs. v. S.H., 439 N.J. Super. 137, 144 (App. Div. 2015). We "defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527,

552 (2014)). That deference is justified because of the Family Part's "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010). We defer to the trial court's credibility determinations unless its "findings 'went so wide of the mark that a mistake must have been made.'" N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). We review the trial court's interpretation of the law de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

Pursuant to Rule 5:12-4(b): "[t]he testimony of a child may, in the court's discretion, be taken privately in chambers or under such protective orders as the court may provide." See N.J. Div. of Youth & Fam. Servs. v. S.S., 185 N.J. Super. 3, 6-7 (App. Div. 1982) (finding that recording and simultaneously transmitting the in camera interview and having the judge stop the interview to solicit questions was proper).

Because defendant did not object to the procedure utilized during the interview or at trial, we review the judge's conduct for plain error. R. 2:10-2; see also State v. Macon, 57 N.J. 325, 337 (1971). This standard requires the error, if any, "to have been clearly capable of producing an unjust result[.]" R.

9

2:10-2. In that regard counsel's failure to object suggests that he did not view the error, if any, was significant at the time. <u>Macon</u>, 57 N.J. at 333.

N.J.S.A. 2A:84A-32.4 addresses procedures for conducting child interviews.[3] N.J.S.A. 2A:84A-32.4(a) provides:

> (1) . . . in any action alleging an abused or neglected child under P.L.1974, c.119 (C.9:6-8.21 et seq.), the court may, on motion and after conducting a hearing in camera, order the taking of the testimony of a victim or witness on closed circuit television at the trial, out of the view of the jury, defendant, or spectators upon making findings as provided in subsection b. of this section.
>
> (2) In granting such an order, the court shall assure that:
>
>> (a) the victim or witness will testify under oath;
>>
>> (b) the victim or witness will submit to cross-examination by the defendant's attorney; and
>>
>> (c) the defendant, jury, and judge will be permitted to observe the demeanor of the victim or witness when making testimonial statements using closed circuit television.

Further, N.J.S.A. 2A:84A-32.4(b)-(d) provides:

---

[3] N.J.S.A. 2A:61B-1 applies only to civil cases seeking damages for sexual abuse and is thus inapplicable. <u>See</u> <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 282 (2012) (stating that N.J.S.A. 2A:61B-1 "creates a civil remedy for failure to prevent the abuse addressed in that statute").

<span style="float:right">A-3617-19</span>

b.  An order under this section may be made only if the court determines by clear and convincing evidence that there is a substantial likelihood that the victim or witness would suffer severe emotional or mental distress if required to testify in the presence of spectators, the defendant, the jury, or all of them. The order shall be specific as to whether the victim or witness will testify outside the presence of spectators, the defendant, the jury, or all of them and shall be based on specific findings relating to the impact of the presence of each.

c.  A motion seeking closed circuit testimony under subsection a. of this section may be filed by:

> (1) The victim or witness or, in the case of a victim or witness who is under the age of 18, the victim's or witness's attorney, parent or legal guardian;
>
> (2) The prosecutor; or
>
> (3) The defendant or the defendant's counsel.

d.  The defendant's counsel shall be present in the same room as the victim or witness at the taking of testimony on closed circuit television. The defendant and the defendant's attorney shall be able to confer privately with each other during the testimony by a separate audio system.

Although the judge did not strictly adhere to the statute, defendant, who affirmatively assented to the proposed procedure, has not shown that the alleged error was "clearly capable of producing an unjust result." R. 2:10-2; see N.J.

11

<u>Div. of Child Prot. & Permanency v. C.W.</u>, 435 N.J. Super. 130, 135-36 (App. Div. 2014). Tellingly, defendant to this day has failed to identify a single inconsistent statement or evidence of bias or motive that he would have capitalized on through cross-examination. Indeed, defendant, who knew what the testimony would be, neither submitted questions in advance nor requested an opportunity to cross-examine L.B. at the conclusion of her testimony. We conclude there was no plain error requiring reversal.

For the same reason, defendant's ineffective assistance of counsel claim has no merit. A defendant in a Title Nine matter who alleges ineffective assistance of counsel must fulfill both prongs of the <u>Strickland</u> test:

> (1) counsel's performance must be objectively deficient—i.e., it must fall outside the broad range of professionally acceptable performance; and
>
> (2) counsel's deficient performance must prejudice the defense—i.e., there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
>
> [<u>N.J. Div. of Youth & Fam. Servs. v. B.R.</u>, 192 N.J. 301, 307 (2007) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984)).]

The first prong requires a litigant to "demonstrate that the attorney's actions 'were beyond the wide range of professionally competent assistance." <u>N.J. Div. of Youth & Fam. Servs. v. B.H.</u>, 391 N.J. Super. 322, 347 (App. Div.

12

2007) (internal quotation marks omitted) (quoting State v. Savage, 120 N.J. 594, 614 (1990)). Regarding the second prong, a "reasonable probability" that the results of the matter would have been different means a "probability sufficient to undermine confidence in the outcome." B.H., 391 N.J. Super. at 348 (quoting Strickland, 466 U.S. at 694). "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). A petitioner "must allege facts sufficient to demonstrate counsel's alleged substandard performance." Ibid.

Defendant has failed to satisfy either Strickland prong. Counsel's decision to forego cross-examination appears to have been reasonable trial strategy, knowing that questioning the victim was unlikely to be fruitful. See State v. Fritz, 105 N.J. 42, 54 (1987) (quoting State v. Williams, 39 N.J. 471, 489 (1963)). ("[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel.") Defendant has not submitted a certification of what cross-examination would have revealed. It is apparent from the record that instead defense counsel vigorously pursued the issue of corroboration. Regardless, he has not shown a "reasonable probability" that the results of the matter would have been different.

Defendant has not shown that the deficiency prejudiced him in any way, deprived him of a fair trial, or changed the outcome of the proceeding. See B.H., 391 N.J. Super. at 351. His ineffective-assistance claims are bald assertions, and thus defendant is not entitled to relief.

Finally, we reject defendant's argument that L.B.'s testimony constituted an out-of-court statement that required corroboration. "[T]he corroboration requirement of the statute does not apply where the child victim testifies to the abuse at a fact-finding hearing." N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 542 (App. Div. 2014). That Rule 5:12-4(b) provides an alternative way to take testimony does not render the testimony an out-of-court statement.

To the extent we have not addressed any of the parties' remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3617-19