**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2711-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.M. and M.B.-G.,

     Defendants,

and

H.V.,

     Defendant-Appellant.

_____

IN THE MATTER OF Y.B.,
D.D.B., Ha.V., He.V., and
C.V., minors.

_____

Submitted September 30, 2025 – Decided October 29, 2025

Before Judges Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey. Chancery Division, Family Part, Union County, Docket No. FN-20-0084-21.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Arthur David Malkin, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor Y.B. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Peter Alvino, Designated Counsel, on the brief).

PER CURIAM

In this Title Nine action, defendant H.V. appeals from a September 26, 2022 Family Part order finding he sexually abused his seventeen-year-old stepdaughter, Y.B. (Yasmin), made final by a March 28, 2024 order terminating litigation filed by the Division of Child Protection and Permanency.[1] Defendant maintains, because Yasmin did not testify, he was denied his right of confrontation. Contending Yasmin's out-of-court accusations were not properly

---

[1] Consistent with the parties' briefs, we use initials to preserve the confidentiality of the proceedings, R. 1:38-3(d)(12), and pseudonyms for ease of reference.

corroborated, defendant further argues the trial judge erroneously admitted her statements. Lastly, defendant claims inaudible references in the transcripts of the proceedings inhibit our review. Yasmin's law guardian joins the Division, urging us to uphold the abuse finding. Because we conclude there was sufficient credible evidence in the record supporting the family judge's decision, we affirm.

## I.

During the multi-day fact-finding hearing, the Division presented the testimony of its investigator, Teresa McLaughlin, and moved into evidence certain portions of her report. The Division also called Barry A. Katz, Ph.D., who was qualified as an expert in psychology without objection. Yasmin's law guardian did not present any evidence. Defendant testified on his own behalf.

Following closing arguments, the trial judge issued a cogent oral decision, setting forth his factual and credibility findings in view of the governing legal principles. We summarize the facts that are pertinent to this appeal.

S.M. (Sonya) and M.B.-G. are the biological parents of Yasmin, born December 2003, and D.D.B. (Dylan), born June 2005. At the time of the present

3

offense, defendant resided with Sonya and their biological children, Ha.V., born July 2011, He.V., born December 2012, and C.V., born May 2015.[2]

The allegations of abuse arose on May 19, 2021, when school officials reported to the Division that Yasmin disclosed she left the family home in December 2020 because defendant sexually abused her during a family party and a few days thereafter. Yasmin claimed she told Sonya, who did not believe her.

The following day, Yasmin gave a video-recorded statement to detectives at the Union County Prosecutor's Office in McLaughlin's presence. Yasmin explained, on December 17, 2020, during a party for her sister in the family home, defendant entered Yasmin's bedroom and "touched her vagina and her breasts over her clothes." She stated defendant whispered into her ear, "kiss me." Yasmin reported Dylan walked into the room and defendant stopped touching her; she then told Dylan what happened.

Yasmin stated the second incident also occurred in her bedroom. She asserted defendant gave her "[a] peck in her mouth" and tried "to slide [his] tongue in her mouth, but she kept her teeth locked. . . . He place[d] a finger over

---

[2] Sonya, M.B.-G., D.D.B., Ha.V., He.V., and C.V. are not parties to this appeal.

her lips and he kissed her again. But then she turned her head sideways." Yasmin reported defendant stopped because Dylan again walked into the room.

Yasmin cried throughout the interview. She told the detectives she did not come forward about the abuse sooner because she was worried about the impact on her mother and her younger siblings.

Following Yasmin's statement to police, McLaughlin interviewed defendant in the family home. Defendant denied the abuse. Defendant acknowledged he "consumed eight beers," "was tipsy," and entered Yasmin's bedroom during the party, but "[h]e denied sexually molesting her." He also denied any misconduct during the alleged second incident. Defendant's testimony at the hearing echoed his denials.

During McLaughlin's testimony, the Division attempted to play Yasmin's video-recorded statement, but portions of the statement were not audible and the Division did not provide an accompanying transcript. Accordingly, the judge denied the Division's application to admit the statement into evidence. Instead, the judge permitted the Division to admit McLaughlin's detailed notes of Yasmin's statement to police, but ordered McLaughlin's return for cross-examination.

A-2711-23

Dr. Katz testified about his evaluation of Yasmin on July 6 and August 2, 2021, and described in detail Yasmin's recollection of both encounters. He found Yasmin's description of the incidents "clinically significant" because she provided "very explicit detailed experiences" rather than "a verbal kind of story narrative." For example, Yasmin described how the touch felt and made her feel.

Dr. Katz further testified Yasmin reported experiencing depression, mood swings, and difficulty sleeping following the incidents. Dr. Katz concluded Yasmin had "symptoms consistent with post-traumatic stress disorder [(PTSD)] relating to prior sexual abuse experiences, namely the sexual abuse that she reported by her stepfather." On cross-examination, however, Dr. Katz acknowledged he also evaluated Dylan who "denied everything" Yasmin alleged about the abuse.

In his oral decision, the trial judge found the Division established defendant abused Yasmin through her out-of-court statements as corroborated by Dr. Katz's testimony. The judge reasoned Yasmin's "very detailed statement to Dr. Katz about what happened" had "the ring of credibility." The judge also cited the psychological tests administered by Dr. Katz. Citing Dr. Katz's diagnoses, including PTSD, "anxiety from a lack of support at home," and

6

"anxiety and depression from the recent sexual trauma," the judge found Dr. Katz's opinions "provide[d] adequate corroboration of [Yasmin]'s out-of-court statements."

Further, the judge found Yasmin's statements, as recorded in McLaughlin's report, were "pretty credible" because Yasmin "denied her stepfather ever was disrespectful or disrespected her prior to this incident." The judge also found McLaughlin "testified in accordance with what she had written in her reports." According to the judge, "the most overwhelming and persuasive part of the evidence [was Yasmin]'s detailed statements that were copied in detail by [McLaughlin]." The judge did not find any "small deviations in details" to be significant. Citing defendant's testimony, the judge was persuaded "there was a moment in time when [Yasmin] and [defendant] were not in the company of anyone else" during the twelve-hour party.

II.

Our circumscribed standard of review of the Family Part's fact-finding determination is well established. See N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 112 (2011). On appeal from orders issued in Title Nine cases, we accord considerable deference to the trial court's credibility determinations and findings of fact, as long as those findings are supported by "competent, material

and relevant evidence." N.J.S.A. 9:6-8.46(b); see also N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017).

We intervene only "if the trial court's conclusions are 'clearly mistaken or wide of the mark.'" N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 227 (2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We owe no deference to the trial court's legal conclusions, which we review de novo. N.J. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 384 (App. Div. 2017).

Title Nine cases are fact sensitive, and the trial court should "base its findings on the totality of circumstances." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011). Notably, the Title Nine proof standard is less stringent than in guardianship cases for the termination of parental rights, which instead must be proven by clear and convincing evidence. R.D., 207 N.J. at 113.

Pertinent to this appeal, an "[a]bused child" under Title Nine "means a child under the age of 18 years whose parent, guardian, or other person having his [or her] custody and control . . . [c]ommits or allows to be committed an act of sexual abuse against the child." N.J.S.A. 9:6-8.9; see also N.J.S.A. 9:6-8.21(c)(3). "Sexual abuse" is defined as "contacts or actions between a child

and a parent or caretaker for the purpose of sexual stimulation of either that person or another person." N.J.S.A. 9:6-8.84. Relevant here, sexual abuse includes, but is not limited to: "the employment, use, persuasion, inducement, enticement, or coercion of any child to engage in . . . any sexually explicit conduct or simulation of such conduct"; "sexual conduct including molestation"; and "sexual contact as defined in N.J.S.[A.] 2C:14-1 and a prohibited sexual act as defined in N.J.S.[A.] 2C:24-4." N.J.S.A. 9:6-8.84(a) to (c).

In turn, N.J.S.A. 2C:14-1 defines "[s]exual contact" as "intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." Further, N.J.S.A. 2C:24-4 defines a "[p]rohibited sexual act" as "[a]ny act of sexual penetration or sexual contact as defined in N.J.S.[A.]:2C:14-1."[3]

---

[3] Although a kiss is not listed among the enumerated prohibited acts under N.J.S.A. 2C:24-4, a kiss may support a finding of sexual abuse if the kiss was for the purpose of sexual stimulation or arousal. See N.J.S.A. 9:6-8.84. Defendant does not expressly challenge the second incident as failing to meet the statutory requirements and, as such, we need not decide the issue. We note only the judge credited Yasmin's statement that defendant touched her vagina and breasts during the first incident – and a single incident is sufficient for an abuse or neglect finding.

Under N.J.S.A. 9:6-8.46(a)(4), "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect."  Accordingly, "a child's hearsay statement may be admitted into evidence, but may not be the sole basis for a finding of abuse or neglect." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011).

Corroboration of a child's hearsay statement pursuant to N.J.S.A. 9:6-8.46(a)(4) requires "[s]ome direct or circumstantial evidence beyond the child's statement itself." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 522 (App. Div. 2017).  Corroboration can be established by varied means. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 435-36 (App. Div. 2002).  We have observed the "most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003).  Because there often is no direct physical or testimonial evidence to support a child's statements, however, corroborative evidence may be circumstantial. See Z.P.R., 351 N.J. Super. at 436.

The proofs adduced before the trial judge sufficiently met these well-established standards. In his well-reasoned decision, the judge properly found Dr. Katz's opinions sufficiently corroborated Yasmin's out-of-court statements. Dr. Katz testified Yasmin suffered from PTSD, anxiety, and depression related to sexual trauma. We have long recognized a psychologist's expert opinion can corroborate a child's allegations of abuse. See N.J. Div. of Child Prot. & Permanency v. I.B., 441 N.J. Super. 585, 591-92 (App. Div. 2015); see also Z.P.R., 441 N.J. Super. at 439.

In reaching our conclusion, we reject defendant's reliance on our decisions in New Jersey Division of Child Protection & Permanency v. N.B., 452 N.J. Super. 513, (App. Div. 2017), and New Jersey Division of Child Protection & Permanency v. J.D., 447 N.J. Super. 337 (App. Div. 2016). In N.B., we found insufficient evidence of corroboration, in part because the psychologist's report stating the child suffered from PTSD as a result of the alleged abuse or neglect constituted inadmissible hearsay under N.J.R.E. 808. 452 N.J. Super. at 523-26. Similarly, in J.D., we cautioned documentary evidence in lieu of testimony "fails to allow the judge to resolve disputed issues or make credibility determinations." 447 N.J. Super. at 353.

Unlike the psychologist in N.B., see 452 N.J. Super. at 520, however, Dr. Katz testified at the hearing and was subjected to cross-examination. Similarly, unlike the "'trial on the papers'" in J.D., see 447 N.J. Super. at 341, Dr. Katz and McLaughlin testified at the hearing about Yasmin's allegations of abuse. We therefore conclude, as did the trial judge, Dr. Katz's assessment was not inadmissible hearsay and sufficiently corroborated Yasmin's account.

We also reject defendant's contention he was denied his right to confrontation because Yasmin did not testify at the hearing. Defendant's reliance on our decision in New Jersey Division of Child Protection & Permanency v. C.W., 435 N.J. Super. 130 (App. Div. 2014) is misplaced. Unlike the present matter, in C.W., we considered the admission of the child's in camera testimony. Id. at 140-41. We held in a protective services action, "filed pursuant to N.J.S.A. 9:6-8.21, when a defendant objects to utilizing an alternative to the child's in-court testimony, the judge must adhere to the statutory procedures outlined in N.J.S.A. 2A:84A-32.4, prior to allowing in camera testimony of a child witness." Id. at 135 (emphasis added).

In doing so, in C.W., we recognized "due process guarantees civil litigants a measure of confrontation," even though the Sixth Amendment is inapplicable in civil proceedings. Id. at 142. (quoting A.B. v. Y.Z., 184 N.J. 599, 604

(2005)). Notably, we reiterated an abuse or neglect "finding cannot be based solely on 'previous statements made by the child relating to any allegation of abuse or neglect,' without further corroboration." Id. at 145-46 (quoting N.J.S.A. 9:6-8.46(a)(4)).

We conclude the judge's finding that Yasmin's statements were sufficiently corroborated was supported by his sound assessment that they were reliable and trustworthy accounts of the abuse Yasmin alleged against defendant. Because Yasmin's statements were sufficiently corroborated, they were properly admitted under N.J.S.A. 9:6-8.46(a)(4), and did not deny defendant his right to confrontation.

Little need be said regarding defendant's argument that technical audio problems with the proceedings resulted in an incomplete transcript, hindering appellate review. Well-settled principles guide our review.

"The complete transcript is of crucial importance for a meaningful review to both the appellate court and to new counsel on appeal." State v. Paduani, 307 N.J. Super. 134, 141 (App. Div. 1998) (quoting State v. Green, 129 N.J. Super. 157, 166 (App. Div. 1974)). To ensure due process and fairness when a proceeding's verbatim record is inadequate, the parties and the judge may "reconstruct the record in a manner sufficient to provide a reasonable assurance

of accuracy and completeness." State v. Bishop, 350 N.J. Super. 335, 347 (App. Div. 2002). The party who contends the record is incomplete has the burden to assist the judge in making the record complete. Id. at 348. However, when there is no indication defendant did so, he cannot now complain on appeal. See, e.g., State v. A.R., 213 N.J. 542, 561 (2013) ("Under [the invited error rule], trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal'" (quoting State v. Corsaro, 107 N.J. 339, 345 (1987))).

In the present matter, defendant did not move for a remand to complete the record he now finds objectionable. In his merits brief, defendant does not identify any omissions that prejudiced his ability to raise or argue issues on appeal. Nor do the inaudible portions of the transcripts preclude our review. The transcript of the judge's decision does not contain any inaudible gaps and is fully understandable.

Applying our limited scope of review and well-established legal standards, we are satisfied there was competent, credible evidence in the record to support the judge's finding defendant abused Yasmin within the meaning of N.J.S.A. 9:6-8.21(c)(3).

A-2711-23

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division